**Calvin BROOKS, Individually and on behalf of all others similarly situated, Plaintiffs–Appellants,**

**Wesley Flynn, et al., Plaintiffs,**

v.

**Richard F. CELESTE; Richard P. Seiter; William Dallman; Dr. G. Martinez; and Wes Jones, Defendants–Appellees.**

Nos. 92–3370, 92–3897.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 19, 1993.

Decided Nov. 9, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 17, 1995.

David A. Little (Argued and Briefed), Legal Services Ass'n, Lima, OH, for plaintiffs-appellants.

Cordelia A. Glenn, Asst. Atty. Gen. (Argued and Briefed), Allen P. Adler, Asst. Atty. Gen. (Briefed), Office of the Atty. Gen. of Ohio, Columbus, OH, for defendants-appellees.

Before: MARTIN and RYAN, Circuit Judges; and EDGAR, District Judge.*

* The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennes-

RYAN, Circuit Judge.

Plaintiffs filed this 42 U.S.C. § 1983 class action on behalf of all current and future inmates confined at the Lima Correctional Institute (LCI), an Ohio state prison. Plaintiffs accused the defendants of inflicting cruel and unusual punishment in violation of the Eighth Amendment by failing to provide the plaintiffs with adequate medical care. After a bench trial before a magistrate acting as a special master, the district court entered judgment for defendants. Plaintiffs appealed, but this court dismissed plaintiffs' appeal for lack of jurisdiction due to their defective notice of appeal. 16 F.3d 104 (6th Cir.1994). However, we now vacate that decision and address the case on the merits. We shall affirm in part, but also remand for further factfinding.

### I.

On May 22, 1987, plaintiffs filed a complaint alleging that defendants inflicted cruel and unusual punishment in violation of the Eighth Amendment by being deliberately indifferent to plaintiffs' serious medical needs. Specifically, plaintiffs alleged that Dr. Martinez, the physician at LCI, repeatedly failed to conduct proper physical examinations and to prescribe necessary pain medications; plaintiffs also alleged that Dr. Martinez regularly cancelled prescriptions made by other doctors without consulting the prescribing doctors or examining the inmates. The other defendants allegedly failed to properly supervise Dr. Martinez and to remedy the problems once they were brought to defendants' attention.

The special master heard six days of testimony in October and November 1990. He filed a report on October 24, 1991. The special master first found that

plaintiffs' challenge to the overall structure for providing health services to the inmates at LCI [is] not well taken....

... There is ... no basis in the record before this Court for a finding that the facilities at Lima manifest the deliberate

see, sitting by designation.

indifference toward the well-being of the institution's inmates that must be shown under *Estelle v. Gamble,* 429 U.S. 97 [97 S.Ct. 285, 50 L.Ed.2d 251] (1976)....

However, even though the *facilities* did not support an Eighth Amendment claim, the special master found that

> sufficient flaws in the *implementation* of that system exist to warrant this Court's limited intervention....
>
> These flaws relate to the manner in which the institution's physician, Dr. Guilermo Martinez, fails to perform basic medical responsibilities.

(Emphasis added.) The report detailed Dr. Martinez's actions and concluded that he acted with deliberate indifference toward the plaintiffs' serious medical needs. However, the precise basis for the finding of deliberate indifference is unclear; as we explain later, the precise imprecision of this finding makes all the difference. Some parts of the report describe Dr. Martinez's actions as "malpractice"; at another, the report labels the doctor's care as "not only indifference, but, in some instances, outright hostility." Thus, one might determine that the special master found that Dr. Martinez repeatedly acted with negligence, and those negligent acts formed the basis for the deliberate indifference conclusion. Read another way, the special master found that Dr. Martinez actually knew that his care was potentially harmful, and for that reason was deliberately indifferent.

The district court read the report in the former light; the court did not, however, note any ambiguity in the report. Having interpreted the report as finding that Dr. Martinez repeatedly acted with negligence, the district court concluded that repeated acts of negligence cannot by themselves amount to "deliberate indifference." Plaintiffs appealed the district court's judgment, as well as its earlier decisions to dismiss plaintiffs' claims for compensatory damages and to deny plaintiffs' motion to amend the complaint, and its later decision to deny plaintiffs' motion for relief from the judgment.

## II.

### A.  Eighth Amendment

■ The Eighth Amendment's ban against cruel and unusual punishment obliges prison authorities to provide medical care for prisoners' serious medical needs. In *Estelle v. Gamble,* the Supreme Court held that

> deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (citations and footnotes omitted). The Court held, however, that mere negligence does not violate the Eighth Amendment:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, *a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.*

*Id.* at 106, 97 S.Ct. at 292 (emphasis added).

■ The Supreme Court recently explained why plaintiffs bringing Eighth Amendment claims must allege some intent on the part of officials: "The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment.* " *Wilson v. Seiter,* 501 U.S. 294, 300, 111 S.Ct. 2321, 2325, 115 L.Ed.2d 271 (1991). Therefore, a plaintiff must prove by a preponderance of the evidence, *see Doe v. Sullivan County, Tenn.,* 956 F.2d 545, 555–56 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 187, 121 L.Ed.2d 131 (1992), both an objective and subjective component: (1) a sufficiently grave deprivation, such as serious medical needs; and (2) a sufficiently culpable

state of mind. *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324. In all cases, the required state of mind is wantonness; however, the meaning of wantonness depends on the type of offending conduct:

> [O]ur cases say that the offending conduct must be *wanton.* Whitley makes clear, however, that in this context wantonness does not have a fixed meaning but must be determined with "due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." ... "[T]he State's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities," so that in that context, as Estelle held, "deliberate indifference" would constitute wantonness.

*Id.* at 302, 111 S.Ct. at 2326 (quoting *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)).

■ In this last Supreme Court term, the Court defined "deliberate indifference." *Farmer v. Brennan,* — U.S. —, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In *Farmer,* the Court held that a prison official acts with deliberate indifference when he acts with criminal recklessness. This state of mind requires that the official " 'consciously disregar[d]' a substantial risk of serious harm." *Id.* at —, 114 S.Ct. at 1980 (alteration in original) (quoting Model Penal Code § 2.02(2)(c) (1985)). Thus, a showing of deliberate indifference requires a showing of the official's actual awareness of a substantial risk of serious harm. *Id.* at —, 114 S.Ct. at 1981.

Prior to *Farmer,* some courts of appeals decisions might be read to hold that repeated acts of negligence by themselves constitute deliberate indifference. *See DeGidio v. Pung,* 920 F.2d 525 (8th Cir.1990); *White v. Napoleon,* 897 F.2d 103 (3d Cir.1990); *Rogers v. Evans,* 792 F.2d 1052 (11th Cir.1986); *Wellman v. Faulkner,* 715 F.2d 269 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104

S.Ct. 3587, 82 L.Ed.2d 885 (1984); *Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Todaro v. Ward,* 565 F.2d 48 (2d Cir.1977).

However, these cases really establish that *one way to prove* that an official acted with deliberate indifference is to show that he repeatedly acted in a certain manner. In such cases, the repeated acts, viewed singly and in isolation, would appear to be mere negligence; however, viewed together and as a pattern, the acts show deliberate indifference. Thus, when the courts referred to "repeated acts of negligence," the language was simply unfortunate—the pattern of the acts actually helps prove that *each act* was committed with deliberate indifference.

For example, in *Wellman,* the Seventh Circuit stated that "[a]s a practical matter, 'deliberate indifference' can be *evidenced by* 'repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff....' " 715 F.2d at 272 (emphasis added) (quoting *Ramos,* 639 F.2d at 575). Thus, the court in *Wellman* seemed to describe a method of proof, not a *per se* equating of negligent acts to deliberate indifference. Similarly, in *Todaro,* the case most heavily relied upon by other courts, *see Wellman,* 715 F.2d at 272; *Ramos,* 639 F.2d at 575, the Second Circuit explained: "And while a single instance of medical care denied or delayed, viewed in isolation, *may appear* to be the product of mere negligence, repeated examples of such treatment *bespeak* a deliberate indifference by prison authorities...." 565 F.2d at 52 (emphases added). Again, the court in *Todaro* merely described a method of proving deliberate indifference that involved proving a repetition of misconduct that would appear to be negligence when viewed alone.[1]

We should note that *Farmer* recognizes the legitimacy of showing deliberate indifference by circumstantial proof. The Court in *Farmer* reminded courts that "[w]hether a

---

1. Similarly, the court in *White* explained that the plaintiff alleged more than "a mere isolated episode of inadvertence"; from the persistently painful conduct "one reasonably may *infer* that the doctor is either intentionally inflicting pain

... or is deliberately indifferent." 897 F.2d at 109 (emphasis added). Likewise, the court in *Rogers* explained that medical care can be "so inappropriate as to *evidence* intentional maltreatment." 792 F.2d at 1058 (emphasis added).

prison official had the requisite knowledge of a substantial risk is a question of fact *subject to demonstration in the usual ways, including inference from circumstantial evidence ....*" — U.S. at ——, 114 S.Ct. at 1981 (emphasis added). In *Farmer*, the prisoner wished to equate the obviousness of the risk—placing a transsexual prisoner into the general male prisoner population—with deliberate indifference. Although the Court rejected this purely objective approach, it noted that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Similarly, the courts in *Wellman* and *Todaro* merely sought to approve using repeated acts as circumstantial evidence of deliberate indifference; *Farmer* suggests that this use is proper.

■ To the extent that some cases in fact hold that repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise. The Supreme Court in *Farmer* reiterated that the Eighth Amendment requires that the inflicting official act or fail to act with subjective awareness of the deprivation. Lack of objective reasonableness, *i.e.*, a failure to act as a reasonable person would have acted, does not by itself equal deliberate indifference. *See id.* at ——, —— n. 8, 114 S.Ct. at 1978, 1982 n. 8. Repeatedly violating an objective standard of reasonableness does not necessarily mean that the official acted with "deliberate indifference" as defined in *Farmer*. The official may be incompetent, but he is not acting wantonly, and thus is not inflicting "punishment."

Neither the special master nor the district court had the benefit of *Farmer*'s holding. Given the ambiguity in the special master's report, *Farmer*'s importance is now clear. If, as the district court read the report, Dr. Martinez was merely repeatedly negligent, then *Farmer* dictates that he did not act with deliberate indifference. However, if Dr. Martinez was subjectively aware of a substantial risk of serious harm, then he acted with deliberate indifference as defined in *Farmer*. Also, no specific findings of fact

were made regarding the deliberate indifference of the defendants who are Dr. Martinez's supervisors. Therefore, we remand to the district court with instructions to supplement the factual findings and conclusions of law in order to clarify whether deliberate indifference was proven.[2]

## B. Claims for Compensatory Damages

■ Plaintiffs also argue that the district court erroneously dismissed *sua sponte* the claims for compensatory damages against defendants. Plaintiffs' original complaint named defendants in their official capacities only. State officials sued only in their official capacities are not "persons" under § 1983 when sued for compensatory damages. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Consequently, the district court correctly dismissed plaintiffs' compensatory damages claims in the original complaint.

## C. Motion to Amend the Complaint

■ Finally, plaintiffs contend that the district court should have granted their motion to amend the complaint, which sought to name defendants in their individual capacities and to include compensatory damages claims. The district court explained its decision in detail:

Whether the defendants are named as individuals or in their official capacities is an issue around which [a § 1983] case revolves. *There is no reason to expect that one named solely as an official capacity defendant in a § 1983 action should be on notice that he or she may be considered subject to an action for damages in their individual capacity.* In the original complaint in this case, under each defendant's name in the caption is the notation "Official Capacity Only." The prayer for damages included a request for money damages which was dismissed by the Court sua sponte on Eleventh Amendment grounds. Only after the claim for money damages was dismissed did plaintiffs seek to amend the complaint to pursue this action against

---

**2.** Our disposition of the appeal renders it unnecessary to consider plaintiffs' assignment of error

to the district court's denial of plaintiffs' motion for relief from the judgment.

defendants as individuals. *The Court finds defendants have had no notice of the proposed claim.*

... All the facts which would have warranted suing defendants as individuals were known to plaintiffs when the original complaint was filed.... *The Court finds that plaintiffs could have asserted the proposed claims when the original action was filed without the need for discovery.*

... Plaintiffs obtained class certification over defendants' argument that this action should not be maintained as a class action because it was essentially one for individual relief for a handful of inmates, which the Court rejected. *Had the original complaint contained claims against individual defendants the Court doubts whether it could have found class certification appropriate.* ... [P]laintiffs should have apprised the Court and counsel of their intentions to seek money damages from individual defendants prior to seeking class certification.... While it does not appear that this failure is attributable to subjective bad faith, ... class certification was nonetheless obtained without the true scope and character of the action being disclosed....

... The proposed claim seeks adjudication of whether specific individual defendants were deliberately indifferent to the serious medical needs of specific individual inmates. *The proofs required in either case are so different that, although the issue has not been raised, the Court questions whether these claims could be appropriately joined in one action.*

(Emphases added.)

■ A district court's decision regarding a motion to amend under Federal Rule of Civil Procedure 15(a) is reviewed for abuse of discretion. *Robinson v. Michigan Consol. Gas Co.,* 918 F.2d 579, 591 (6th Cir.1990) (citing *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir.1986)).

Under Rule 15(a), leave to amend a pleading "shall be freely given when justice so requires." This court has explained the factors that a district court should consider when deciding whether to grant leave to amend:

"Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted."

*Head v. Jellico Housing Auth.,* 870 F.2d 1117, 1123 (6th Cir.1989) (quoting *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir.1973)).

The district court did not abuse its discretion by refusing to grant the plaintiffs' leave to amend their complaint. The district court based its decision on several of the above outlined factors. The district court found that the two critical factors, notice and prejudice, weighed against granting leave to amend. The defendants were sued only in their official capacities. Both the caption and "Parties" section of the complaint clearly named the defendants in their official capacities only. Given that § 1983 claims are often brought against state officials in their official capacities only, the district court did not abuse its discretion by finding that defendants lacked notice of individual capacity claims. In addition, the district court correctly found that the defendants would be prejudiced by granting leave to amend. The district court had already decided that class certification was proper, rejecting the defendants' argument that the suit was too individualistic. The plaintiffs then wished to add the individual compensatory damages claims *after* obtaining class-status approval—approval granted only because those very claims were absent. The district court's determination of prejudice was proper.

Finally, the district court noted that an amendment would further delay a trial on the heart of the case: the prisoners' medical care. Taken together, the lack of notice, the prejudice to the defendants, and the pro-

longed delay justified the district court's exercise of discretion in refusing to allow leave to amend.

## III.

For the reasons stated above, we **AFFIRM** in part, and **REMAND** in part to the district court for further factfinding.