**William E. KIRKLAND, Plaintiff,**

v.

**Marvin T. RUNYON, Jr. Postmaster General of the United States Postal Service, Defendant.**

Civ. A. No. C–1–93–353.

United States District Court, S.D. Ohio, Western Division.

May 23, 1995.

William Kirkland, Cincinnati, OH, pro se.

Gerald Francis Kaminski, U.S. Dept. of Justice, Gerald Francis Kaminski, U.S. Atty., Cincinnati, OH, Michael Propst, U.S. Postal Service, Law Dept. Philadelphia Field Office, Philadelphia, PA, and Christopher W. Zadina, U.S. Postal Service, Law Dept., Chicago, IL, for defendant.

ORDER: (1) GRANTING DOC. 22 AND DENYING DOC. 29 AS TO THE ONLY REMAINING ISSUE IN THIS CASE—PLAINTIFF'S TITLE VII DISPARATE IMPACT CLAIM; AND (2) THEREFORE TERMINATING THIS CASE UPON THE DOCKET

SHERMAN, United States Magistrate Judge.

This is a Merit Systems Protection Board ("MSPB") appeal for which both parties have consented to entry of final judgment by a United States Magistrate Judge. Plaintiff, an African–American, is currently employed as a mail handler by the United States Postal Service. In his complaint, plaintiff claims that the Postal Service (1) acted without just cause, (2) discriminated against him on the basis of his race, and (3) retaliated against him, when it terminated him—a decision later reduced to a seven-and-a-half month suspension—for yelling at his boss the following: "I wish I had to throw up; I would throw up all over you[,] [y]ou mother f*cker. I hate you, and I'll get even. F*ck the job. That's all you people think about." *Kirkland v. Runyon*, 876 F.Supp. 941, 943 (S.D.Ohio 1995).

The parties previously filed cross motions for summary judgment regarding all three of plaintiff's claims. On January 31, 1995, the Court, in ruling on the motions, granted judgment in the Postal Service's favor regarding claims one (lack of just cause) and three (retaliation). *Id.* at 945. Because the Postal Service did not provide the Court with

MSPB transcript cites relative to plaintiff's second claim (racial discrimination), the merits of that claim were not reached, and the summary judgment motions were stayed in that regard. *Id.* The Court is now in receipt of the Postal Service's supplemental brief providing transcript cites (doc. 37),[1] as well as plaintiff's Fed.R.Civ.P. 59, 60 motion to "vacate" the Court's January 31st summary judgment ruling on claims one and three (doc. 38).

## I.

■ The Court construes the latter of these documents liberally and in *pro se* plaintiff's favor either as a Rule 59(e) motion to alter, amend or reconsider the Court's January 31st ruling, or as a Rule 60(b) request for relief from that ruling. *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir.1992) (per curiam).

No matter how the motion is construed, it lacks merit. Although Rule 59(e) motions must be filed within ten days of entry of judgment, plaintiff's motion was not filed until February 28, 1995, *i.e.*, eighteen days beyond that deadline. *See* doc. 38 at 1. Nonetheless, the Court has viewed the Rule 59 motion on the merits, and finds reconsideration inappropriate here. Nor has plaintiff shown that he is otherwise entitled to Rule 59 or 60 relief. Accordingly, his motion is DENIED. *United States v. Grable*, 25 F.3d 298, 302–03 (6th Cir.1994); *Brooks v. Celeste*, 16 F.3d 104, 108–09 (6th Cir.), *vacated on other grounds*, 39 F.3d 125 (1994).

## II.

■ The Court next turns to the merits of plaintiff's racial discrimination claim. The procedural history of the claim was previously explained, as was the applicable summary judgment standard. *Kirkland, supra*, 876 F.Supp. at 943–44. The claim—brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*—arises from plaintiff's belief that he was disciplined, on account of his race, differently than Postal

---

1. Although the Court afforded plaintiff an opportunity to file a memorandum in opposition to the Postal Service's supplemental brief, *see* doc. 36 at 8, plaintiff did not do so. He has, however, opposed the Postal Service's summary judgment motion. *See* doc. 29.

Service non-minorities to whom he is similarly situated. Such disparate treatment is actionable under Title VII "when an employer treats some employees less favorably than others because of race...." *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir.1995).

### A

■ To rule on the merits of that claim, the Court need not defer to the MSPB, and must undertake, on a *de novo* basis and under [5 U.S.C.] § 7703(c), the disparate treatment analysis common to Title VII employment discrimination cases. *See, e.g., McGruder v. Frank*, 825 F.Supp. 1300, 1308–10 (S.D.Ohio 1992), *aff'd*, 995 F.2d 1067 (6th Cir.1993).

*Kirkland*, 876 F.Supp. at 944. The shifting burden test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to Title VII disparate treatment cases as well. *See, e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992). Under that analysis,

> [P]laintiff bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence.... If [ ]plaintiff successfully proves a *prima facie* case, the burden shifts to the [Postal Service] to "articulate some legitimate, nondiscriminatory reason for [its discipline of plaintiff]." *McDonnell Douglas*, 411 U.S. at 802 [93 S.Ct. at 1824]. Once the [Postal Service] carries this burden, the burden shifts back to [ ]plaintiff to prove by a preponderance of the evidence "that the legitimate reasons offered by the [Postal Service] were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 [101 S.Ct. 1089, 1093, 67 L.Ed.2d 207] (1981).

*Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir.1991).

■ To establish a *prima facie* case of disparate treatment regarding his termination and/or suspension, plaintiff must, as a preliminary matter, "produce evidence sufficiently strong to raise an inference that the [Postal Service's] conduct was racially motivated." *Wilson v. Stroh Cos., Inc.*, 952 F.2d 942, 945 (6th Cir.1992) (internal quotations and citations deleted; brackets added and deleted). Plaintiff must also show that: (1) "he was a member of a protected class"; and (2) "for the same or similar conduct, he was treated differently than similarly-situated non-minority employees." *Mitchell, supra*, 964 F.2d at 582–83. In that regard, it is important to note that the non-minority employees compared to plaintiff must be similarly situated "in all respects." *Id.* at 583. In other words, they "must have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [Postal Service's] treatment of them for it." *Id.* Accordingly, the misconduct of these similarly-situated employees must be of "comparable seriousness" to plaintiff's infractions. *Id.* The burden to show such "comparability" rests with plaintiff. *Id.* at 583 n. 5.

■ Alternatively, a plaintiff who demonstrates "direct evidence of discrimination" may proceed "without meeting the requirements of a *prima facie* case set forth in *McDonnell Douglas*." *Ang, supra*, 932 F.2d at 549 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985)). *Accord Huguley, supra*, 52 F.3d at 1370.

■ If plaintiff meets his *prima facie* burden or shows direct evidence of discrimination, and if the Postal Service demonstrates a legitimate, non-discriminatory reason for its conduct, the burden shifts, as noted, back to plaintiff to demonstrate that the Postal Service's purported reasons for its disciplinary conduct are but a pretext. To demonstrate pretext, plaintiff must show that "he did not violate the work rule for which he was disciplined[,] or that other employees who engaged in similar misconduct received less severe sanctions." *Wilson, supra*, 952 F.2d at 945.

### B

Assuming, for purposes of summary judgment, that the facts set forth by plaintiff are

true, *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the Court finds as follows: On the day plaintiff made the statements at issue, March 3, 1991, he was employed as a mail handler and supervised by Postal Service employee Charles Frothingham. Frothingham, in turn, reported to Dennis McIntosh and Kevin Sullivan. Doc. 29 at 2, 3, 14. Plaintiff yelled at Frothingham; the decision to discipline plaintiff was made by Frothingham and/or McIntosh. *Id.* at 5.

█ To satisfy his *prima facie* burden, plaintiff compares, in his summary judgment motion, his discipline to that given by Postal Service officials to three fellow employees: Daniel Ottke, Robert Bressert and John Houston. *Id.* at 20, 23. At the MSPB hearing, plaintiff also compared his misconduct and discipline to that of another Postal Service employee, Ronald Campbell. *See* MSPB Hearing Transcript ("Tr.") at 12, 166. Of the four, Ottke, Bressert and Campbell testified before the MSPB. When they violated Postal Service rules and were disciplined, these three individuals were mail handlers like plaintiff, and supervised by Frothingham.[2]

Ottke testified that, on March 2, 1991, he angrily yelled at Frothingham, "If you're going to fire me, fire me." Tr. 145, 148. He may then have also used profanity, but remains unsure. Tr. 149. Unlike plaintiff, he did not tell Frothingham that he hated him and would get even. Tr. 153. Nor did he make mention, as plaintiff did, of vomiting on Frothingham. *Id.* In fact, he later apologized to Frothingham for his remarks. Tr. 150. His precise discipline is not made clear in the record; it is clear, however, that he was not terminated. Tr. 144–45. *See also* doc. 29, ex. H (Ottke interrog.) at 3.

Campbell—whose discipline is also unclear—testified that he never used "obnoxious" obscenities in his conversations with Frothingham. Tr. 155. For example, unlike plaintiff, Campbell never called Frothingham a "mother f*cker." Tr. 154–55. On one occasion, Frothingham asked Campbell to drive a forklift in a manner which he questioned, and Campbell told Frothingham that he "didn't know what the f*ck he was doing." Tr. 156–57. Nonetheless, Campbell drove the forklift as directed. Tr. 157.

Bressert testified that he was disciplined for disobeying one of Frothingham's orders. Tr. 161. When confronted with his disobedience, he said to Frothingham, "F*ck you, and f*ck you in front of everybody." Tr. 162. *See also* doc. 29, ex. J (Postal Service June 28, 1988 "Request for Disciplinary Action" form) at 1. As a result, he was suspended for seven days, a punishment later reduced to a six-month letter of warning. Tr. 161. Prior to that occasion, Bressert—a Postal Service employee for more than twenty years, *see* tr. 160—had never been disciplined. Tr. 163.

Houston, who no longer works for the Postal Service, did not testify. Assuming again, for purposes of summary judgment, that plaintiff's version of the facts is true, the Court finds that Houston was once plaintiff's supervisor; and that, in October 1990, Houston choked plaintiff, causing him to suffer injuries and stay off work. Doc. 29 at 17. When a conflict resulted thereafter between plaintiff's treating physician and the Postal Service as to when plaintiff had to return to work, plaintiff disobeyed Postal Service orders and refused to work on his supposed return date. *Id.* at 18. Accordingly, plaintiff was disciplined for failing to follow a direct order. *Id.* at 18–19. Houston, for unexplained reasons, was not disciplined at all. *Id.* at 19.

**C**

█ As can be seen from the above, none of the four Postal Service employees at issue is similarly situated to plaintiff. Houston, for

---

**2.** Of the four, Houston is African–American like plaintiff. Tr. 29–30. Therefore, as a matter of law, Houston cannot be compared to plaintiff for purposes of establishing a *prima facie* case. *Mitchell*, 964 F.2d at 582–83. Bressert, on the other hand, is white. Doc. 37 at 6. Accordingly, he can be compared. *See id.*

The race of the remaining two employees, Ottke and Campbell, is not made clear in the record. If African–American, they, like Houston, cannot be compared to plaintiff. This omission in the record is immaterial, however, since, for the reasons set forth below, neither is similarly situated to plaintiff. *See infra.*

example, was not supervised by Frothingham; he was a supervisor himself. While Ottke, Campbell and Bressert were, on the other hand, supervised by Frothingham, the circumstances of their misconduct is easily distinguishable from plaintiff's. It is unclear, for example, if Ottke cursed at Frothingham. Even if he did, his language was not otherwise abusive or threatening, as was plaintiff's. Although Campbell used the word "f*ck," he did so in a colloquial, non-abusive manner. Moreover, he then completed the task assigned to him without incident.

Bressert is, admittedly, the closest of these cases. Putting aside the profanity contained in the comments by both Bressert and plaintiff, a distinguishing characteristic becomes apparent: plaintiff threatened Frothingham, while Bressert did not. Nor did Bressert suggest an act of physical force (*i.e.,* vomiting). Moreover, even if the Court assumes, *arguendo,* that the remarks and employee status of Bressert and plaintiff are sufficiently close in nature to make them similarly situated for purposes of *Mitchell,* plaintiff has not satisfied his burden of demonstrating that his misconduct is "comparably serious" to that of Bressert. *See Mitchell,* 964 F.2d at 583. This is because, at the time they were each disciplined, plaintiff had a prior history of Postal Service infractions, while Bressert did not. Under Postal Service employee discipline policy—the merits of which are not at issue here—progressive discipline is administered. Under that policy doctrine, a first infraction merits a lesser discipline than a second infraction, which, in turn, merits a lesser discipline than a third infraction, and so on. This formula is followed:

| Infraction | Discipline |
| --- | --- |
| First | Verbal Warning |
| Second | Written Warning |
| Third | Seven-day suspension |
| Fourth | Fourteen-day suspension |
| Fifth | Fourteen-day suspension or removal |
| Sixth | Removal |

*See* tr. 36. *Accord Walker–Roper v. Frank,* No. C–1–89–161, doc. 34 at 2 (S.D.Ohio Nov. 7, 1990) (unreported decision, attached).

At the time of plaintiff's misconduct, he had already received, in his eight-year Postal Service employment, a written warning followed by two seven-day suspensions, two fourteen-day suspensions, and a seventy-day suspension. Doc. 22 at 3–5. Having thus already been given two fourteen-day suspensions, the Postal Service was entitled to discharge plaintiff when the incident at issue occurred. In fact, the evidence demonstrates that the Postal Service had been lenient up to that point, and could have previously terminated plaintiff's employment (*e.g.,* by discharging him instead of giving him a seventy-day suspension). The decision to reduce plaintiff's termination to a suspension without pay is yet more evidence of this leniency. Bressert, on the other hand, had, as noted, never before been disciplined. Thus, his conduct should have merited just a verbal warning. The decision by Frothingham to give him a seven-day suspension without pay is thus, if anything, punishment more severe than that afforded plaintiff. Accordingly, even if plaintiff and Bressert are similarly situated—and the Court believes they are not—no racial discrimination occurred here, as plaintiff was treated better, not worse than Bressert. Finally, Bressert's status, as a long-term Postal Service employee, further distinguishes him from plaintiff. *See Shah v. General Elec. Co.,* 816 F.2d 264, 271 (6th Cir.1987).

### D

■ Having thus shown that plaintiff has not satisfied his burden to demonstrate a *prima facie* case of disparate treatment, and that no direct evidence of discrimination exists here, the Court need not act further. Nonetheless, assuming that such a *prima facie* case had been shown, or that direct evidence of discrimination could be shown, legitimate, non-discriminatory reasons exist to support the Postal Service's initial decision to terminate plaintiff. Those reasons include, *inter alia,* the fact that: (1) in light of plaintiff's history of Postal Service infractions, termination was proper under the progressive discipline doctrine for misconduct by plaintiff of virtually any kind; and (2) plaintiff's misconduct, in verbally abusing Frothingham in front of at least one other employee, was an act sufficiently egregious—in and of itself—to merit termination, even had plaintiff not been previously disciplined at all.

*See Kirkland,* 876 F.Supp. at 945; *Walker–Roper,* doc. 34 at 2.

If the Postal Service were in fact required to demonstrate such non-discriminatory reasons for its actions, the burden would again shift to plaintiff to demonstrate pretext. For the reasons discussed above, there is simply no evidence of pretext here.

## III.

The Court therefore GRANTS the Postal Service's motion for summary judgment (doc. 22), and DENIES plaintiff's cross summary judgment motion (doc. 29), as to the only remaining issue in this case, *i.e.,* racial discrimination, the second of plaintiff's three claims. Having, as noted, previously granted judgment against plaintiff's two other claims, the Court therefore **TERMINATES THIS CASE UPON THE DOCKET.**

**IT IS SO ORDERED.**