Dennis H. HUGULEY, et al., Plaintiffs,

Abbie L. Perry and Lonnie K. Perry, Plaintiffs–Appellants,

v.

GENERAL MOTORS CORPORATION, Defendant–Appellee.

No. 93–1246.

United States Court of Appeals, Sixth Circuit.

Argued April 22, 1994.

Decided Sept. 20, 1994.

Rehearing Denied Dec. 8, 1994.*

pursue the duplicative causes of action in state court.

Courtney E. Morgan, Michelle J. Harrison (argued and briefed), Chambers, Steiner, Mazur, Ornstein & Amlin, Detroit, MI, for plaintiffs-appellants.

Brian K. Zahra, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, Barbara A. Brown, Paul, Hastings, Janofsky & Walker, Washington, DC (argued and briefed), for defendant-appellee.

Before: WELLFORD, BOGGS and SILER, Circuit Judges.

SILER, Circuit Judge.

This appeal stems from a race discrimination class action against Defendant General Motors Corporation (GM). The issue before this court is whether the district court abused its discretion by enjoining the Michigan state court lawsuit of Abbie and Lonnie Perry, plaintiffs/appellants herein, based on the preclusive effect of the consent decree approved in the class action. For reasons stated herein, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further consideration consistent with this opinion.

# I

In 1983, a class action was filed on behalf of black salaried employees who were subject to the corporation's appraisal system. Plaintiffs claimed that GM's appraisal system discriminated against them on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2 to 2000e–7. Specifically, plaintiffs claimed that the performance appraisal system was "heavily dependant [sic] upon the subjective assessment of white supervisory personnel and [had] insufficient objective criteria and supervisory review to eliminate potential racial bias." *Huguley v. General Motors Corp.*, 638 F.Supp. 1301, 1302 n. 2 (E.D.Mich.1986).

A tentative settlement agreement was reached in October 1988, and submitted to the court in January 1989. The consent decree provided for equitable and monetary relief for incumbent employee class members. Notice was then given to the class plaintiffs that objections to the consent decree, if any, were required to be filed by March 31, 1989. Plaintiff Abbie Perry filed a

timely objection to the consent decree. The district court approved entry of the decree on September 5, 1989. This court affirmed the order on February 22, 1991. *Huguley v. General Motors Corp.,* 925 F.2d 1464 (6th Cir.1991) (unpublished), and certiorari was denied in *Dodson v. General Motors Corp.,* —— U.S. ——, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991).

Plaintiff Abbie Perry (joined by her husband, Lonnie, for loss of consortium) then filed a complaint against GM in the Wayne County Circuit Court in August 1991, alleging that her claims of discrimination were different from those raised in the class action suit. Defendant moved to enforce the consent decree and to enjoin the state court action, on the ground that litigation of the claims asserted therein was precluded by the res judicata effect of the decree. The district court granted GM's motion and, citing the "relitigation exception" of the federal Anti–Injunction Act, 28 U.S.C. § 2283, enjoined Perry's state court action. On June 30, 1992, Perry appealed from that order. That appeal was decided against Perry after the parties filed their briefs in this action. *Huguley v. General Motors Corp.,* 999 F.2d 142 (6th Cir.1993). Essentially, this court determined that: (1) while the Anti–Injunction Act generally precludes federal courts from interfering with state court proceedings, there is an exception to "protect" or "effectuate" prior federal court judgments; (2) the district court's legal determinations (that the consent decree had res judicata effect over Perry's claim and that the litigation exception applies) will be reviewed de novo; (3) the discretionary decision to enjoin the Perrys' prosecution of their claims in state court will be reviewed for an abuse of discretion; (4) the final consent decree was intended by all parties to address more than just the effects of discrimination in the appraisal process; (5) the injunction issued in state court was a bar to all claims of discrimination arising out of conduct taking place before the date of the consent decree; and (6) the proper measuring date is October 15, 1991, the date the Supreme Court denied certiorari. *Id.* at 145–48.

While the above appeal was pending, Abbie and Lonnie Perry filed a second state court complaint, which raised essentially the same claims of race discrimination asserted in their first state court action, as well as other acts of discrimination allegedly occurring after the effective date of the consent decree and continuing to the present date. Specifically, the complaint alleged that in 1992 non-minority co-workers of Abbie Perry accepted offers to transfer out of the department where they worked, but that Perry rejected GM's attempts to transfer her because the positions offered were not acceptable to her. This situation stemmed from GM's establishment of a regional benefits system in May 1990. The new Regional Personnel Administration was to be located at three separate facilities. In May 1990, Abbie Perry was transferred to the Central Location in Detroit. As GM is currently "out-sourcing" much of the administration of benefits, GM employees in the benefits department are being displaced.

In response to the second state court complaint, GM sought to enforce the consent decree and to enjoin the state court proceedings. On January 21, 1993, the district court ruled that the new claims of discrimination were also barred by the consent decree, in part because they alleged discrimination occurring prior to the effective date of the decree (October 15, 1991) and, to the extent they referred to events occurring after October 15, 1991, they alleged merely the present effects of pre-effective-date discrimination. Lonnie Perry's loss of consortium claim was enjoined as well. Abbie and Lonnie Perry then appealed the January 1993 order.

## II

The state court actions were enjoined by the district court pursuant to the relitigation exception to the Anti–Injunction Act, 28 U.S.C. § 2283, which provides:

> A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, **or to protect or effectuate its judgments.**

(emphasis added). As this court held, the district court, "[b]ased on its jurisdiction over the underlying controversy (the *Huguley* case), ... retained jurisdiction to enjoin all state actions if necessary 'to protect or effectuate' its judgment in an underlying controversy." *Huguley*, 999 F.2d at 145 (citing *Royal Ins. Co. of Am. v. Quinn–L Capital Corp.*, 759 F.Supp. 1216, 1228 (N.D.Tex. 1990), *aff'd in part*, 960 F.2d 1286 (5th Cir. 1992)).

■ The district court's determination that the consent decree had res judicata effect over appellant's claim and that the relitigation exception applies will be reviewed de novo. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146–47, 108 S.Ct. 1684, 1689–90, 100 L.Ed.2d 127 (1988). However, the decision to enjoin the appellants' prosecution of their claims in state court is reviewed on an abuse of discretion standard. *Id.* A district court has discretion to order or to deny an injunction after it determines that it would be legally justified under 28 U.S.C. § 2283 in granting an injunction. *American Town Center v. Hall 83 Assoc.*, 912 F.2d 104, 111 (6th Cir.1990).

■ Given the exceptions to the Anti–Injunction Act, and the de novo standard of review, it is "the well established principle that a district court's interpretation of its consent decrees is entitled to substantial deference on appeal." *Huguley*, 999 F.2d at 146. The district court which oversaw and approved the consent decree is presumed to be in the best position to understand the meaning of the decree. *Brown v. Neeb*, 644 F.2d 551, 558 n. 12 (6th Cir.1981). Therefore, this court ruled that the injunction by the district court served to bar all claims of discrimination arising out of conduct taking place before the date of the consent decree. *Huguley*, 999 F.2d at 148.

As she did in the first appeal, plaintiff Abbie Perry argues that she continues to suffer from discrimination from General Motors. However, in the first appeal, this court found that the proper measuring date is October 15, 1991, when the Supreme Court denied certiorari, not September 1, 1989, the date the district court approved the decree. The consent decree at page 13 states:

This Decree and the agreements contained herein are effective as of the date the Decree is approved and entered by the Court and time for appeal has run or the approval of the Decree has been finally affirmed.

Of the three post-decree discrimination claims that Perry makes, two were found to be without merit. First, Perry claimed that under the Elliott–Larsen Civil Rights Act, Mich.Comp. Laws § 37.2101 et seq., "each day that a person occupies a lower position than he/she would have occupied, absent prior discrimination, that person suffers a new act of discrimination." *Huguley*, 999 F.2d at 148. Second, Perry also alleged that since her "demotion" to a different department in 1988, she suffers a new act of discrimination each day she is not reinstated to her original position and department. Both of these claims were found to fall under the express "future effects of prior discrimination" language of the consent decree. *Id.* at 149.

■ However, in the first appeal this court left open the issue of whether Perry is currently being discriminated against because whites are constantly being transferred out of her division, while blacks are relegated to "languishing" in this allegedly disfavored area of GM. In May 1990 Perry was transferred to the Central Location in Detroit. She states that this location is commonly referred to as the "chocolate factory," as this is where many of the minorities are placed. Perry claims that in "mid–1992" GM improperly failed to transfer her out of the "chocolate factory" and she has thus suffered from GM's discriminatory actions ever since.

The district court below ruled that "the mid–1992 event of GM improperly failing to transfer Perry out of the 'chocolate factory' constitutes nothing more than an allegation of a continued effect of her 1990 transfer." The court supported this ruling by referring to "the novelty of the five-year mechanism created in the Consent Decree" to prevent further discrimination. This "mechanism" includes:

[a] complex computer monitoring system for statistical tracking of promotions and pay increases for incumbent class mem-

bers and a commitment to redress any significant shortfalls for black employees in these areas. Further requirements are (1) monitoring and review of employee complaints, (2) detailed recordkeeping and reporting as to compliance with the Consent Decree, and (3) monetary relief, including increases in base salary for approximately 1,000 incumbent class members with the greatest pay disparities as compared to their white counterparts and one-time cash payments to approximately 2,800 former employee class members. Thus, the court reasoned, GM would not have a "blank check" to discriminate.

However, the district court erred in making this determination. "The emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). GM established a regional benefits system in 1990 which removed the benefits section from the plant level. After Perry was transferred to the central location of the new Regional Personnel Administration in 1990, GM began "outsourcing" the administration of benefits. Many of the employees at the central location were relocated. Thus, a new violation could exist if a black employee, unlike a white employee, is not treated comparably with respect to transfers out of the central location. The district court therefore improperly enjoined the state court claims with regard to any allegations that GM discriminated by transferring or failing to transfer employees that occurred after October 15, 1991. We therefore remand this case to the district court with instructions to lift the injunction on this state action only.

### III

In its July 1993 ruling, this court also addressed the issue of whether Lonnie Perry's loss of consortium claim was similarly barred under the consent decree. The court held that "his claims are also expressly precluded by the consent decree." *Huguley*, 999 F.2d at 149.

However, this claim was once again asserted in the appellants' second state court ac-

tion. The district court briefly addressed Lonnie Perry's claim:

> Last, because Lonnie Perry's loss of consortium claim depends for its life on the Elliott–Larsen counts, it must be barred as well under the doctrine of *res judicata.*

This language is almost identical to the district court's June 9, 1992, order. As this claim has been previously decided, it remains barred by the consent decree.

Therefore, this case is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** with instructions to lift the injunction on this state action only.