**Dennis H. HUGULEY; Ruth E. Dunn, Plaintiffs–Appellants,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellee.**

No. 93–2617.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 31, 1995.

Decided May 1, 1995.

Cheryl D. Bloom (argued and briefed), Bloom & Bloom, Farmington Hills, MI, for plaintiffs-appellants.

Maurice G. Jenkins, Bowman & Brooke, Detroit, MI, Barbara B. Brown (briefed), Dennis L. Casey, Neal D. Mollen (argued), Paul, Hastings, Janofsky & Walker, Washington, DC, for defendant-appellee.

Before: WELLFORD, BOGGS, and SILER, Circuit Judges.

WELLFORD, Circuit Judge.

This is the third appeal arising from a consent decree entered in a large class action, employment discrimination suit brought in federal district court against the defendant, General Motors Corporation (GM). The decree purported to settle all past claims of discrimination as well as all claims arising from the future effects of past discrimination. However, distinguishing between past acts of discrimination, the future effects of past discrimination and new acts of alleged discrimination has proved quite challenging. In fact, several members of the class, including the plaintiff, Ruth E. Dunn, have brought subsequent state discrimination actions, alleging that GM has engaged in certain discriminatory conduct that is not subject to, or controlled by, the settlement embodied in the decree. In the two previous appeals involving Abbie Perry, we sought to distinguish between the type of discrimination claims that are barred by the decree and those claims that survived the settlement because they are clearly based on post-decree discriminatory conduct. We now attempt to identify with greater clarity the type of allegations required to state an employment discrimination claim that survives the decree.

## I. PROCEDURAL HISTORY

Dunn is an African–American female who has been employed by GM since June of 1969. In the hopes of gaining a promotion, Dunn alleges that she attained both bachelor's and master's degrees in business administration. She asserts, however, that no promotion was forthcoming. In July of 1983, Dunn, along with other similarly situated GM employees, filed a class action law suit against GM, alleging racial discrimination with respect to promotions, demotions, layoffs, recalls, pay, transfers and other subjective personnel decisions in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–7. The central target of the class-wide claims was GM's employee appraisal system. This appraisal system established grade levels which corresponded to an employee's experience and supervisory responsibility. This system was GM's principal method for evaluating employee performance.

On July 21, 1986, the United States District Court for the Eastern District of Michi-

gan certified the class as all African–American, salaried GM employees residing in Michigan, Ohio and Indiana who alleged employment discrimination on the basis of race. *Huguley v. General Motors Corp.*, 638 F.Supp. 1301, 1305 (E.D.Mich.1986). Prior to trial, the parties settled the dispute and submitted to the district court an elaborate consent decree. The decree provided extensive equitable relief because a substantial portion of the plaintiffs' proof rested on statistical evidence that black employees fared poorly, relative to white employees, under GM's appraisal system. This relief included a computer monitoring system for statistical tracking of GM's subjective employment decisions. The monitoring system was to remain in effect for the five year life of the decree. It provided detailed record keeping and reporting requirements as well as the establishment of a grievance process for individual class members to ventilate disagreements with GM over the appraisal system.

> The consent decree purported to resolve all claims which were asserted by named plaintiffs, or the members of the class .... that relate to compliance with Title VII, § 1981, the Elliott–Larsen Civil Rights Act ... or any other federal, state or local statute, order or ordinance governing equal employment opportunity, based on acts, omissions, policies, procedures, decisions, and practices of the Company relating to alleged race discrimination in the appraisal systems at issue in this case ... occurring prior to the date of this Decree and any future effect of such prior occurrences.

In addition, the decree stated that

> [a]s to matters covered in this Decree, compliance with the Decree shall be deemed to constitute compliance with the provisions of Title VII, § 1981, the Elliott–Larsen Civil Rights Act, and any other federal, state or local statute.... To the extent permitted by law, the final entry of this Decree shall be fully binding and effective for purposes of res judicata and collateral estoppel upon the Company and all persons raising claims in this case, either individually or as a class ... resulting from the General Motors appraisal sys-

tems or the personnel decisions at issue in this case.

The district court tentatively approved the decree in February of 1989, subject to notice of the proposed settlement to the individual class members. In March of 1989, several class members, including Dunn, filed objections to the proposed settlement. After a fairness hearing, the district court overruled the objections and approved the decree; a decision which this court subsequently affirmed. *See* 128 F.R.D. 81, 89 (E.D.Mich. 1989), *aff'd,* 925 F.2d 1464 (6th Cir.), *cert. denied,* 502 U.S. 909, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991).

One of Dunn's fellow class members, Abbie Perry, filed a subsequent action in Michigan state court, alleging a violation of state discrimination laws. *Huguley v. General Motors Corp. (Perry I),* 999 F.2d 142 (6th Cir. 1995). In response, GM sought to enjoin the suit on the grounds that the state claims were estopped under the terms of the consent decree and were res judicata. The district court noted that the Anti–Injunction Act, *see* 28 U.S.C. § 2283, normally prohibits a federal court from enjoining an ongoing state court proceeding but that the Act contained an exception that allowed a district court to stay a state action in order to protect or effectuate its judgments. Perry's state claims were barred by res judicata and by virtue of the consent decree, the court enjoined the Michigan action. *Perry I,* 999 F.2d at 145. We affirmed the district court, concluding that the decree barred all state discrimination claims arising out of GM's conduct before October 15, 1991, the effective date of the decree. *Id.* at 148–49 & 148 n. 4.

In *Perry I,* plaintiff also argued that GM engaged in *new* acts of discrimination *after* the effective date of the decree. We refused to address the merits of Perry's claim because the allegations in her complaint were insufficient to state a cause of action. *Id.* at 149. We reserved for another day the question of how the decree would affect a state law claim based on discriminatory conduct that occurred after October 15, 1991.

In *Perry II,* we resolved that question. *See* 35 F.3d 1052 (6th Cir.1994). There, Perry alleged specific acts of new discrimination

in a second state court action. Perry asserted that, after October 15, 1991, GM transferred her to an undesirable post in its benefits administration department. *Id.* at 1054. Allegedly, the post was undesirable because GM was in the process of contracting out much of the department's work. *Id.* Plaintiff alleged further that many white employees successfully attained transfers to more career advancing jobs or departments, while she was denied numerous requests for a transfer. *Id.* at 1055. The district court held the state claims were barred by res judicata, finding that the discriminatory acts alleged by Perry were not new acts of discrimination but rather "continuing effects" from the old patterns of discrimination addressed by the consent decree. *Id.* at 1055–56. On appeal, we affirmed much of the district court's order but reversed, in part, on "the continuing effects" question. *Id.* at 1056. We noted that " '[t]he emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists.' " *Id.* (quoting *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)) (emphasis in original). We explained that if similarly situated white workers were able to obtain transfers while Perry remained in the allegedly undesirable post despite requests for a transfer, this might indicate a new act of race discrimination post October 15, 1991. *Id.* Thus, we remanded to the district court with instructions to lift the stay with respect to any of Perry's state law claims in that category. *Id.*

Like Perry, Ruth Dunn filed a state discrimination action, on February 5, 1993, seeking damages for GM's discriminatory conduct both before and after October 15, 1991. GM filed a motion in federal district court to enforce the consent decree and to enjoin Dunn from pursuing her state discrimination claims. At a hearing before the district court, Dunn conceded that allegations of

pre-decree discrimination were precluded by the settlement. She argued, however, that GM engaged in discriminatory conduct after October 15, 1991. At the court's suggestion, Dunn submitted a supplemental memorandum alleging that GM committed the following acts of post-decree discrimination:[1]

(1) In November of 1991, GM placed the plaintiff in the Service Administration Department as a level five employee. A white employee, Janine Pouget, worked with the plaintiff in the same department. Ms. Pouget had only a high school education and began working for GM in July of 1982. In February of 1992, Ms. Pouget received computer training from GM that had been denied the plaintiff. Moreover, GM provided Ms. Pouget a private office while the plaintiff was relegated to a desk in a common area. GM also gave Ms. Pouget supervisory responsibilities over the plaintiff and other employees in the department, despite the fact that Ms. Pouget was also a level five employee. Even though Ms. Pouget had a terrible attendance record, unlike the plaintiff, GM promoted her to program administrator in June of 1993.

(2) GM promoted Melinda Gruetman, another white employee with a level six status, to Statistician Analyst in plaintiff's department, even though Ms. Gruetman had no prior experience. In December of 1991, Ms. Gruetman earned a bachelor's degree and was immediately promoted to a level seven employee. In August of 1992, GM named the plaintiff to replace Ms. Gruetman. Although plaintiff did exactly the same work, she remained a level five employee and was given the title of "Associate" Statistician Analyst. In addition, plaintiff did not receive a pay increase.

(3) Numerous employees were transferred into the Service Administration De-

1. GM argues that we should discount these allegations because they were not included in Dunn's state complaint, but rather were added after the district court requested a supplemental memorandum. While normally the relitigation exception requires a comparison between the federal judgment and the allegations in the state complaint, *see Perry I,* 999 F.2d at 146, the district court specifically instructed Dunn to frame her post-decree allegations in a supplemental memorandum. In fact, Dunn's counsel requested the opportunity to amend her complaint to aver post-decree conduct. Accordingly, we will treat the supplemental memorandum, under the circumstances, as the equivalent of an amended complaint.

partment between 1992 and 1993. The white employees were in the positions for relatively short periods to gain experience and then were promoted, but plaintiff has remained a level five employee with no subsequent promotion.

(4) On June 15, 1992, Tammy Vargo, a white employee, was promoted to Statistician Analyst in the Sales Department after completing her bachelor's degree, even though she had previously been a receptionist.

(5) Plaintiff disputed GM's contention that downsizing within the entire company made promotion more difficult, citing seven instances of white employees who obtained promotions after completing their college educations or who obtained promotions without prior experience.

(6) Plaintiff alleged that she requested to be part of the "People Strategy Team" in April of 1993, but that her request was denied despite the fact that she met all objective criteria. Also, GM appointed only white employees to the "People Strategy Team."

Before this court issued its opinion in *Perry II*, the district court granted GM's motion to enjoin Dunn's state court action, finding that her allegations of new discriminatory conduct were merely effects of past discrimination expressly addressed by the consent decree. *See* 842 F.Supp. 941, 943–44 (E.D.Mich.1993). Thus, the district court held that injunctive relief was appropriate to protect the finality of the federal judgment. *Id.* at 945. Dunn filed a timely notice of appeal.

## II. *WHETHER THE DISTRICT COURT PROPERLY ASSUMED JURISDICTION*

■ As in *Perry I*, we believe the district court did not err in assuming jurisdiction in

this case. Dunn was a member of the original class and the allegations in her original complaint constituted an effort, not only to undercut the district court's judgment approving the consent decree, but also to challenge this court's decisions approving the district court's assumption of jurisdiction in the *Perry* cases. Therefore, the district court had jurisdiction and authority to issue an injunction to protect and effectuate the consent decree.[2]

■ As in the two *Perry* appeals, we reiterate that while the Anti–Injunction Act, 28 U.S.C. § 2283, generally prohibits a federal court from enjoining an on-going state court proceeding, the "relitigation exception" allows a federal court to stay a state court action which would undermine the finality of a federal judgment or order. Thus, the central question in this appeal is whether the district court correctly applied the relitigation exception in granting GM injunctive relief. The answer turns on whether Dunn's state action, as amended, attempts to relitigate the claims settled in the consent decree.[3]

## III. *THE STANDARD OF REVIEW*

■ In *Perry I*, we stated that "[b]alancing the narrow construction afforded exceptions to the Anti–Injunction Act, and the *de novo* standard of review, is the well established principle that a district court's interpretation of its consent decrees is entitled to substantial deference on appeal." *Perry I*, 999 F.2d at 146 (emphasis in original). At first blush, giving substantial deference to the district court's interpretation of the decree appears to be inconsistent with de novo review. Yet, in *Brown v. Neeb*, 644 F.2d 551, 558 n. 12 (6th Cir.1981), we explained that

---

**2.** Plaintiff does not challenge the jurisdiction of the district court to consider the issues raised in her original state court complaint.

**3.** Plaintiff advances the meritless argument that her complaint alleges facts sufficient to support a claim of racial harassment, which the district court has already held is not precluded by the decree. *See Thomas v. General Motors Corp.*, No.

91–CV–7068–DT, 1992 WL 521527, at *1 (E.D.Mich. Jan. 31, 1992). As GM properly notes, however, *Thomas* involved allegations of racially motivated physical threats and racial epithets. *Id.* All of Dunn's allegations in the case at bar involve the adverse impact of employment decisions, and she has alleged no *Thomas*-type racial altercations or incidents.

the district court's reading of the decree was merely an additional tool for contract interpretation. Since the application of the relitigation exception to the Anti–Injunction Act depends upon a question of law (*i.e.,* whether the state claims fall within the preclusive effect of the prior federal judgment), the proper standard of review is undeniably de novo. Yet, we do give some weight to the district court's interpretation of the res judicata question in light of its experience in dealing with this class action for a period of more than ten years.

## IV. *DISPARATE IMPACT AND DISPARATE TREATMENT*

Plaintiff recognizes that GM's conduct, prior to October 15, 1991, cannot serve as the basis of a state discrimination action, even if the effects of the old discrimination were felt thereafter. As in *Perry II,* however, Dunn alleges that her state discrimination claims are based on discriminatory practices that have occurred since the effective date of the decree. *Perry II* allowed such a claim to go forward because the plaintiff alleged a "present violation" of Title VII, rather than a present effect of past discrimination. *Perry II,* 35 F.3d at 1056. In the context of the consent decree at issue in this case, "a new violation[, one not barred by the decree,] could exist if a black employee, unlike a white employee, is not treated comparably with respect to" a *particular* GM employment decision. *Id.* GM correctly argues that to satisfy this standard Dunn must *allege* (1) facts which refer *only* to GM's post-decree conduct and (2) facts sufficient to state a cause of action under the substantive law. *See Perry I,* 999 F.2d at 149. Because Dunn's supplemental memorandum alleges only post-decree conduct, she has facially satisfied the first requirement. The question remains whether Dunn has stated a claim of employment discrimination of the type described in *Perry II.*

■ The Supreme Court has recognized two distinct types of Title VII employment discrimination: "disparate treatment" and "disparate impact." Disparate treatment occurs when an employer treats some employees less favorably than others because of

race, religion, sex, or the like. *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). To base a claim on disparate treatment, the plaintiff must show discriminatory motive. *Id.* Such proof can be established by direct evidence or may be inferred based on a prima facie showing of discrimination. *Id.; see also Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Disparate impact results from facially neutral employment practices that have a disproportionately negative effect on certain protected groups and which cannot be justified by business necessity. *International Bhd. of Teamsters,* 431 U.S. at 335–36 n. 15, 97 S.Ct. at 1854 n. 15. Unlike disparate treatment, disparate impact does not require a showing of discriminatory motive, since the claim is based on statistical evidence of systematic discrimination (*i.e.,* a pattern or practice which results in discrimination). *Id.; see also Griggs v. Duke Power Co.,* 401 U.S. 424, 430–32, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971).

■ In the case at bar, the district court held that Dunn failed to allege a new Title VII violation because her allegations involved present effects of GM's prior discriminatory behavior. The district court thought Dunn was trying to prove a *new* Title VII violation by means of "disparate impact" rather than "disparate treatment." The court noted:

> Dunn was given the opportunity to offer present-day, post-decree evidence to support her individual disparate treatment claim. Part of her response was to compare her own work-related abilities and achievements to those of seven white employees . . . who, she claims, are similarly situated. This statistical, group-based method of proving individual disparate treatment necessarily assails the integrity of the five-year monitoring system that the consent decree created to resolve future claims of class-wide discrimination.

*See* 842 F.Supp. at 944. The district court explained that the decree assured class members the ability to seek remedial action if the

computer tracking system revealed that GM's employee appraisal system produced a statistically disparate impact on African–American employees. *Id.* The district judge concluded that Dunn's statistical method of proving discrimination might show group-based disparate impact "[b]ut, it would not directly show that Dunn is being discriminated against because she is black.... [T]his method of proof presents a problem here, where the monitoring system assures that blacks as a group are not being discriminated against." *Id.* (emphasis omitted). Therefore, "[p]ermitting the state court to rule that the group-based evidence—with nothing more—supports an individual claim of race discrimination would effectively undermine the affirmative action monitoring system approved by this court." *Id.*

We believe that the district court understood correctly that the consent decree precludes a class member from suing in state court based entirely on disparate impact. Compliance with the monitoring system provides a work force whose racial composition does not violate Title VII. Therefore, insofar as Dunn seeks to prove a new violation of Title VII by means of statistical disparity in the general work force alone, the district court was correct in holding that such disparity must necessarily be a present effect of past discrimination. Our decision to affirm the district court in this respect, however, does not completely resolve this appeal. Several of Dunn's allegations may be sufficient to state a claim of disparate treatment based on post-decree conduct.

■ Unlike disparate impact, a disparate treatment claim obligates the plaintiff to show discriminatory intent or motive for a *particular* adverse employment decision. *International Bhd. of Teamsters,* 431 U.S. at 335–36 n. 15, 97 S.Ct. at 1854 n. 15. The district judge acknowledged "the remote possibility that Dunn's alleged failure to advance is due to numerous separate acts of intentional discrimination directed against her as an individual." *See* 842 F.Supp. at 943. He added, however, that "if that were the case, I would have expected *some* evidence specifically showing that someone—perhaps someone within her department—deliberately treated her differently because she was black." *Id.* at 943–44 (emphasis in original). Because Dunn did not allege any direct evidence of discriminatory motive, the district court did not find individual disparate treatment.

■ The district court, however, failed to recognize that the requisite intent or motive may be inferred if Dunn properly alleged a prima facie case of disparate treatment. In *McDonnell Douglas,* the Supreme Court held that a rebuttable presumption of discriminatory intent obtains if the plaintiff proves: (1) that she belongs to a racial minority, (2) that she applied for and was qualified for employment, (3) that, despite her qualifications, she was denied a favorable employment decision, and (4) that a white employee with substantially similar or lesser qualifications received the favorable employment. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Direct evidence of discriminatory motive is not required. *E.g., Trans–World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) (holding that the *McDonnell Douglas* test was "designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence'") (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014 (1st Cir.1979)); *International Bhd. of Teamsters,* 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44 ("[T]he *McDonnell Douglas* formula does not require direct proof of discrimination, ..."), *quoted in Blalock v. Metals Trades, Inc.,* 775 F.2d 703, 707 (6th Cir.1985). In *Perry II,* for instance, the plaintiff alleged that she was a black female, that she sought a transfer from the undesirable benefits administration department, that she was denied the transfer, and that white employees with similar qualifications received the transfers. *Perry II,* 35 F.3d at 1055. Although the plaintiff in *Perry II* offered no direct proof of discriminatory motive, we held that her allegations were sufficient to state a *new* claim of employment discrimination, one that was not precluded by the decree. *Id.* at 1056.

■ GM responds that Dunn has not alleged facts sufficient to support a prima facie case of disparate treatment under Title VII. GM argues that Dunn has not alleged that

she applied for the various employment positions noted in her supplemental memorandum, nor has she clearly alleged that she was denied such positions in favor of less qualified white employees. In other words, GM acknowledges that Dunn is in a protected class and that similarly qualified white workers have received promotions which she has not, but GM disputes whether Dunn has ever sought or has ever been denied those positions. GM's argument has merit with regard to many of Dunn's post-decree allegations. For example, her supplemental memorandum alleges that GM promoted Janine Pouget to program administrator despite deficient qualifications. Dunn, however, never alleges in her memorandum that she actually applied for this position or that it was denied her in favor of Ms. Pouget. Similarly, Dunn alleges that seven white employees received promotions upon completing higher education, while she attained a master's degree without a promotion or pay raise. Yet, Dunn never alleges that she applied for any of these positions, or that she was eligible and qualified for each of them. Therefore, absent direct evidence of discriminatory motive, these allegations would not support a claim of disparate treatment.[4]

Several of Dunn's allegations, however, may be sufficient to make out a prima facie case of disparate treatment by GM after October 15, 1991. We believe the district court should reconsider Dunn's allegations in light of *Perry II.* For example, in plaintiff's brief she maintains that she "was placed in Ms. Gruetman's position [and] does exactly the same work Ms. Gruetman had done." This purportedly occurred in August of 1992, and Ms. Gruetman, a white person, was allegedly then classified at the sixth level, and plaintiff remained at the fifth level because she was black. If plaintiff adequately stated such a claim of direct discriminatory treatment, the district court should consider further whether this was a sufficient prima facie averment.[5]

## V. MONITORING SYSTEM UNDER THE CONSENT DECREE

The consent decree obligates GM to maintain for a five-year term detailed records of employees by racial group and to document increases in employment levels, salary, and promotions (including both inter-level and intra-level). The decree mandates certain affirmative relief for African–Americans if GM falls behind in any of these categories. Annual reports are required, and class members, such as Dunn, may object to GM's failure to attain monitoring goals. Under the terms of the consent decree, a class member may not seek court action to enforce the decree if the member has not made a timely objection and has not allowed General Motors up to 45 days to investigate or refute the merits of such an objection.

The decree also creates a "Relative Contribution Assessment Review Panel" (RCARP) to evaluate individual employee complaints about employment rankings or levels. The disaffected employee must submit a *written notice* to RCARP if he or she objects to the ranking or level on racial grounds. RCARP then conducts interviews and an investigation. It must promptly issue a written resolution of the employee's concerns. RCARP's decision is final except for corporate administrative review.

It seems clear that many of Dunn's allegations of discrimination relate to her employment level at GM. GM filed an affidavit in response to the allegations in the plaintiff's supplemental memorandum denying many or most of her factual assertions. There is no showing as to whether Dunn followed the prescribed monitoring procedures in this case. It may be that if she had pursued the monitoring process she could have obtained affirmative relief. If so, Dunn may be barred from proceeding as to some, or all, of her amendment allegations.[6]

---

4. In the event that Dunn, or other class members, cannot allege a prima facie disparate treatment claim, the plaintiff *must* allege "direct" evidence of GM's discriminatory motive to overcome a motion to dismiss.

5. Defendant's responsive affidavit of Ms. Herklelmann simply says that Gruetman "was not promoted to a 7th level salaried classification."

6. RCARP, however, may not be appropriate for all post-decree allegations. RCARP's authority

## VI. *REMAND*

In any event, the district court did not have the benefit of *Perry II* when it made its decision in this case. Therefore, we believe **REMAND** is appropriate to allow the district court to determine whether Dunn has stated a disparate treatment claim, which arose after the effective date of the consent judgment. Insofar as Dunn relies solely on statistical evidence of disparity, she cannot state a new Title VII violation during the life of the decree. If, however, Dunn alleged (1) that she was qualified and applied for a particular employment opportunity after October 15, 1991, (2) that, despite her qualifications, GM denied her the employment opportunity, and (3) that a white employee with lesser or similar qualifications received the opportunity, then she is entitled to a rebuttable presumption of discriminatory intent.[7] *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. If Dunn alleged a prima facie case of disparate treatment based entirely on post-decree conduct, then there may be a "present violation of Title VII" rather than a "continuing effect of past discrimination." *Perry II*, 35 F.3d at 1056. The district court should also consider whether GM's challenged conduct had significant adverse effect upon plaintiff's future job opportunities.[8]

Accordingly, we **AFFIRM** as to the district court's assumption of jurisdiction. We also **AFFIRM** the injunctive relief granted GM with respect to plaintiff's disparate impact claims, including all of the claims in her original complaint. We **REMAND** to the district court, however, to determine whether any of the allegations in Dunn's supplemental memorandum, beyond the type set out in *Perry I*,[9] meet the special pleading standards described in *Perry II* and this opinion.

and jurisdiction is limited to an employee's challenge to his ranking or level. While employment level is undoubtedly a factor which contributes to many of GM's subjective personnel decisions, it is not the only factor.

7. It would seem doubtful that Dunn has a valid race discrimination claim in a situation in which an African–American male attained a position which she coveted.

8. While the other panel members do not join in this holding, Judge Wellford would require more than a *de minimis* violation, one with an intentional and immediate economic impact upon a plaintiff, to find a violation of the decree (beyond *Perry I*).

9. It should be remembered that in *Perry I*, plaintiff claimed, among other things, that GM 1) failed to provide her competitive compensation; 2) excluded her from a merit award; 3) denied her promotion opportunities; 4) failed to promote her to a seventh level; 5) promoted less qualified or experienced persons; and 6) gave her smaller special recognition awards. *Perry I*, 999 F.2d at 146. We decided in *Perry I* "that the parties intended that the consent decree insulate GM from claims such as the ones alleged by Perry." *Id.* at 148.