103 F.3d 129
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Caffie FLATT, Plaintiff-Appellant,
v.
ELECTRIC RESEARCH MANUFACTURING CORPORATION, Defendant-Appellee,
Patrick Hayes and Greg Hayes, Defendants.
 No. 95-5119.
 United States Court of Appeals, Sixth Circuit.
 Dec. 03, 1996.
 
 Before: RYAN and SUHRHEINRICH, Circuit Judges, and ENSLEN, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff, Caffie Flatt, filed this sex discrimination suit under Title VII, 42 U.S.C. § 2000e, against her former employer, Electric Research Manufacturing Corporation, after resigning her employment. She now appeals from the district court's judgment in favor of the defendant, and argues that the district court erred in dismissing her disparate impact claim, and in granting the defendant's motion for judgment as a matter of law with respect to the plaintiff's claim that she was discriminatorily denied a transfer. We shall affirm.
 
 I.
 
 2
 Caffie Flatt was hired by ERMCO as an electrostatic painter in July 1989. Central to Flatt's complaints in this case is her claim that she was unfairly prohibited from permanently transferring to a day-shift position. ERMCO has a written job bid procedure policy that provides that employees may only transfer to jobs with higher labor grades than they presently occupy, and further provides that seniority is a determining factor in choosing between transfer candidates. The policy reads in relevant part as follows:
 
 
 3
 When vacancies occur or new jobs are created, all such job openings shall be posted on a designated bulletin board....
 
 
 4
 Employees desiring consideration, providing they have completed their probationary period and are bidding on a higher labor grade than they are presently in, may apply for the job vacancy by signing their name and employee number to a "Bid Form" in the Human Resource Office.
 
 
 5
 Employees bidding on a job shall be selected from the bidders on the basis of qualifications, physical capacity (as required by the specific job), and seniority. Where qualifications and physical capacity are considered equal, the most senior employee will be given the job.
 
 
 6
 (Emphasis added.) Flatt was hired at a pay grade five; although this grade is worth twenty cents more an hour than grade four, Flatt has claimed that pay grade four
 
 
 7
 was more desirable because that would let you bid on other jobs if more jobs come up available for pay grade five or six or whatever and everybody got to move to day shift quicker that seemed to be a pay grade four.
 
 
 8
 There is no evidence that Flatt was ever denied a transfer other than for reasons that appear in the written policy. Moreover, Flatt presented no evidence of any male employee who was allowed to transfer in violation of company policy.
 
 
 9
 Flatt also claims that she was forced to paint longer hours than her male counterparts, and forced to paint more difficult assignments. According to Flatt's own testimony, however, the reason for the more difficult assignments was not discriminatory, but simply her supervisor's perception that Flatt was the more skilled painter:
 
 
 10
 I asked the supervisor for some help to let the guys to swap out and help me paint the green parts and give me, you know, a little bit more of a break like they were getting. And his words to me was, ... I do not want [a particular male coworker] to paint these green parts because [he] screws up the world.
 
 
 11
 And he can't paint them like you can because you're the best painter I've got. And you're going to paint them, and you're going to paint them right and you're going to paint all the green.
 
 
 12
 For reasons not fully explained in the record, green was considered a harder color to paint.
 
 
 13
 Flatt first tendered her resignation in September 1991, explaining that she could not work nights because she had to help her husband pick cotton, and that her husband and son were used to having her home during the day. She changed her mind a few days later, however, and was rehired. Flatt then permanently resigned her employment on July 16, 1992.
 
 
 14
 The plaintiff filed a charge with the EEOC, which concluded that there was no Title VII violation, and accordingly issued a right-to-sue letter. The plaintiff then filed a one-count complaint alleging that ERMCO violated Title VII, inter alia, by discriminating against Flatt in denying her job transfers, and forcing her to paint for longer periods and on more challenging jobs than were given male employees.
 
 
 15
 After the close of the plaintiff's proofs, the defendant made a Fed.R.Civ.P. 50(a) motion for judgment as a matter of law. The defendant argued that the plaintiff's case could be divided into three parts: (1) that she was discriminatorily denied a transfer to the day shift; (2) that she was subject to discriminatory treatment on the job by, for example, having to paint longer hours; and (3) that she was constructively discharged. The district court agreed with the defendant that "there was not any proof to show intentional discrimination against the plaintiff on the matter of the failure to grant her request to go to the day shift." The court concluded that there was, however, "a jury issue on ... male [disparate] treatment on the job.... I think there is a clear thing that she stayed in to paint six hours." The court then explained that these instances of alleged discrimination were related to the constructive discharge issue:
 
 
 16
 [I]n order for the plaintiff to recover on her claim against the defendant, the plaintiff must prove that the defendant intentionally discriminated against her[ ]. The plaintiff must prove that defendant intentionally made plaintiff's working conditions so intolerable that a reasonable person would feel forced to resign and plaintiff's gender was a motivating factor in defendant's conduct and plaintiff, in fact, resigned.
 
 
 17
 ....
 
 
 18
 Anyway, this is a termination case, a discharge case, so the damages will flow from her discharge, not from the fact that she didn't get promoted because there was--she didn't get to bid in some grade. Then you calculate your damages from that. You calculate your damages at the time of the discharge.
 
 
 19
 That's not to say that some of the conduct didn't start before that. But the [question] is whether or not it was so intolerable that it forced her to resign. Then you will have a chance to do your compensatory damages that flow from that.
 
 
 20
 The plaintiff did not object to the district court's articulation of its conception of the remainder of the case.
 
 
 21
 The plaintiff again made no objection at the time of the formal jury instruction conference, when the district court expressed its intention to treat the instances of alleged discrimination simply as evidence, vel non, of constructive discharge. The plaintiff's attorney specifically inquired about the verdict form, and the possibility that the individual instances of discrimination could be treated as separate potential violations of Title VII, but never complained when he was told they could not be:
 
 
 22
 [PLAINTIFF'S COUNSEL]: Your Honor, my question was are those not separate acts of discrimination other than constructive discharge?
 
 
 23
 THE COURT: No, certainly not. The whole case is constructive discharge. If she wasn't constructively discharged, she has no proof and she's going for broke. If this--she hasn't sued on the 12th day of the week of so and so; I worked so many hours too long and that was--they discriminated against me, and, you know, like an interim promotion.
 
 
 24
 But you can't--the damages will take into account anything that was discriminatory, but unless she proved that she was constructively discharged--she was the employee that went in there and quit. She certainly can't get back pay and all these things that she wants to get unless she was discharged....
 
 
 25
 [PLAINTIFF'S COUNSEL]: I just thought they were separate acts that affected the conditions of employment.
 
 
 26
 THE COURT: They are separate acts that do affect the conditions of employment if they were done intentionally for the purpose of getting rid of her....
 
 
 27
 After this explanation and statement of intention by the district court, the plaintiff made no objection to the form of the jury verdict, which read as follows:
 
 
 28
 Has the plaintiff proved that she was constructively discharged and that the conduct which caused the plaintiff to be constructively discharged was more likely than not partially motivated by the plaintiff's female gender?
 
 
 29
 To this somewhat unartful question, the jury answered no. The district court entered judgment accordingly, and the plaintiff then filed this timely appeal.
 
 II.
 A.
 
 30
 Flatt complains that she made out a prima facie case of disparate impact, but that the district court nonetheless dismissed her claim, sua sponte. This court reviews the district court's sua sponte dismissal of a claim pursuant to Fed.R.Civ.P. 12(b)(6) using the same de novo standard as when it reviews a dismissal following a motion. See Cline v. Rogers, 87 F.3d 176, 179 (6th Cir.1996), petition for cert. filed, 65 U.S.L.W. 3267 (U.S. Sep. 23, 1996) (No. 96-464). "The court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." Id.
 
 
 31
 A plaintiff seeking to establish a Title VII claim has available two distinct theories of discrimination. Huguley v. General Motors Corp., 52 F.3d 1364, 1370 (6th Cir.1995). The first, disparate treatment, "occurs when an employer treats some employees less favorably than others because of race, religion, sex, or the like," and requires proof of discriminatory motive. Id. (citing International Bhd. of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15 (1977)). A disparate impact claim, on the other hand, requires no showing of discriminatory motive, because it is predicated on a theory that discrimination has "result[ed] from facially neutral employment practices that have a disproportionately negative effect on certain protected groups and which cannot be justified by business necessity." Id. (citing International Bhd. of Teamsters, 431 U.S. at 335-36 n. 15). Thus, when proceeding under a disparate impact theory of discrimination, a plaintiff essentially attempts to show that " 'some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination.' " Hartsel v. Keys, 87 F.3d 795, 801-02 n. 4 (6th Cir.1996) (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 987 (1988)), petition for cert. filed, 65 U.S.L.W. 3267 (U.S. Sep. 24, 1996) (No. 96-486). In order to establish a prima facie claim, a plaintiff must show " 'that a specific employment practice or policy caused a significant disparate impact on a protected group,' in this case, women[.]" Id. (quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989)). To do so, a plaintiff must present "statistical evidence of systematic discrimination (i.e., a pattern or practice which results in discrimination)." Huguley, 52 F.3d at 1370.
 
 
 32
 In her brief and at oral argument, Flatt repeatedly conceded both that she could point to no particular ERMCO "practice or policy" that had a disproportionately negative effect on women, and that, in any event, "[t]he practice here was not neutral at all." Instead, she insisted, ERMCO had a "practice" of "running off" the women employees. While the plaintiff's proofs were obviously directed at establishing a disparate treatment theory of discrimination, she appears to believe that these proofs automatically entitle her to also proceed under a disparate impact theory. The plaintiff is confused; the two theories are entirely distinct. Thus, because the plaintiff has not produced one iota of evidence that would establish a disparate impact claim, the district court was correct in dismissing this aspect of her claim.
 
 B.
 
 33
 Flatt makes two additional arguments: one, that her day-shift transfer complaint was not presented to the jury as a separate discriminatory act from the constructive discharge claim; and two, that her evidence of discrete acts of disparate treatment--being forced to paint longer, being forced to paint more green boxes--were not presented to the jury as separate bases for relief under Title VII. She contends that each of these incidents constituted separate discriminatory acts, not merely evidence of intolerable conditions amounting to constructive discharge. The former complaint is best categorized as a complaint about the district court's Rule 50(a) judgment on part of Flatt's claim, while the latter is simply a jury-instruction argument.
 
 
 34
 This court reviews de novo the district court's grant of a judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a), applying the same standard as the district court. Aparicio v. Norfolk & W. Ry. Co., 84 F.3d 803, 806 (6th Cir.1996). "[A] district court should grant a motion for judgment as a matter of law if 'there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ.' " Id. at 806-07 (citation omitted). The plaintiff's Rule 50(a) argument is unquestionably without merit. Flatt presented no evidence that she was ever denied a day-shift transfer except in accordance with established ERMCO policy, and she has not shown that any male was ever permitted to transfer in violation of the policy. Given this complete absence of proof, the district court was entirely correct to dismiss this claim.
 
 
 35
 Implicit in the plaintiff's second argument is a suggestion that the district court wrongly instructed the jury by using a verdict form in which the only basis for recovery was discriminatory constructive discharge, rather than separate alleged incidents of discriminatory conduct. Because the plaintiff failed to object to the jury instructions in this regard, however, this court may only review for plain error. Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc., 76 F.3d 743, 749 (6th Cir.1996); see Fed.R.Civ.P. 51.
 
 
 36
 "The law in this circuit generally requires a formal objection, which should in most circumstances be made both before and after the jury instructions are read to the jury. An exception to this rule occurs only when it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for that claimed error or omission."
 
 
 37
 Preferred RX, Inc. v. American Prescription Plan, Inc., 46 F.3d 535, 547 (6th Cir.1995) (citation omitted). "The purpose of this rule is 'to alert the trial judge to potential problem areas so that the jury can be clearly and correctly instructed.' " Bath & Body Works, 76 F.3d at 749 (citation omitted). Thus, " '[i]n fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error.' " Libbey-Owens-Ford Co. v. Insurance Co. of N. Am., 9 F.3d 422, 427 (6th Cir.1993) (citation omitted).
 
 
 38
 At oral argument, counsel for the plaintiff asserted that he had objected to the jury instructions and verdict format, and in support, pointed to his colloquy with the district court that we have set forth above. The plaintiff is incorrect; nowhere in this colloquy do we find anything properly characterized as an objection. The plaintiff did not inform the district court of its supposed error, and did not offer an alternative approach. We find no plain error in the district court's conclusion that the plaintiff's evidence of unpleasant working conditions constituted the evidence necessary to prove a constructive discharge claim, see Yates v. Avco Corp., 819 F.2d 630, 635-36 (6th Cir.1987), and not evidence of discrete discriminatory acts constituting separate bases for recovery under Title VII.
 
 III.
 
 39
 We AFFIRM.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation