**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0788n.06**
**Filed: October 23, 2006**

**No. 05-4441**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOHN S. PEACE and WILLIAM WALKER, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| RANDALL WELLINGTON, | ) ) | |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**. Plaintiffs-appellants John S. Peace (Peace) and William Walker (Walker) appeal the district court's grant of summary judgment for defendant-appellee Randall Wellington on plaintiffs' claims of disparate impact under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* (Title VII), and violation of their constitutional rights under 42 U.S.C. § 1983 (§ 1983). The district court held that Peace and Walker brought forth no evidence to support a *prima facie* case of disparate impact and also failed to set forth sufficient evidence to establish a genuine issue of material fact that a constitutional violation occurred or that Wellington was responsible for such a violation. For the following reasons, we affirm the district court's judgment.

1

I.

Plaintiffs Peace and Walker are African-American and employed by the Mahoning County Sheriff's Department (MCSD). Defendant Wellington is the duly elected Sheriff of Mahoning County, Ohio. Peace and Walker, as employees of the MCSD, are members of a bargaining unit represented by the Fraternal Order of Police/Ohio Labor Council, Inc. (FOP), and their employment with MCSD is governed by a Collective Bargaining Agreement (CBA). Under Article 36 of the most recent CBA, the parties agreed to eliminate the rank of corporal within the MCSD. Article 36 of the CBA, in relevant part, states:

> Corporals who opt not to take the Sergeants test or who fail the test, shall be returned to the rank of Deputy with no loss of pay and with credit for Departmental seniority as a Deputy. Corporals who opt to not take the Sergeants test will be placed into the Deputies rank in order of their departmental seniority after the promotions to the rank of Sergeant have been filled. Any Corporal who passes this test with a composite score of seventy percent (70%) or better shall be promoted to the rank of Sergeant. Such promotion shall take place prior to any deputy being promoted to the rank of Sergeant.

Accordingly, any corporal who achieved a score of 70 percent or higher would automatically be promoted to the rank of sergeant, while any corporal who did not obtain a score of 70 percent or higher or opted not to take the exam would be demoted to the rank of deputy but without a loss of pay or departmental seniority.

Wellington distributed study material for the promotion examination in the spring of 2001 to Peace, Walker, and all other members of the MCSD who planned to take the examination. Wellington did not participate in the creation, administration, or scoring of the promotion examination. After one rescheduling, the examination was administered on September 29, 2001. Forty-nine deputies and eight corporals, including Peace and Walker,

2

ultimately took the exam. Forty deputies who took the exam passed with a composite score of 70 percent or higher. Of the eight corporals who took the test, four passed and four failed. Peace and Walker were two of the four corporals who failed the promotion examination.

Despite failing the examination, Peace and Walker were not immediately demoted. On February 14, 2002, however, MCSD Deputy Joseph Hood filed a grievance requesting that an arbitrator order Wellington to demote the corporals who failed the exam to the rank of deputy. The arbitrator ultimately found that the parties had mutually agreed to the elimination of the rank of corporal from the organizational structure of the MCSD, that four corporals had failed the examination, and that there were no conditions precedent to the demotion of those who failed. Accordingly, the arbitrator directed Sheriff Wellington to demote the corporals who either failed or opted not to take the examination.

On December 6, 2002, Peace, Walker, and the two other corporals who failed the examination filed a complaint against the MCSD in the Mahoning County Common Pleas Court seeking a permanent injunction barring the MCSD from implementing the arbitrator's judgment, along with punitive damages. On February 24, 2003, the Court of Common Pleas adopted the opinion of the Magistrate Judge Eugene Fehr and dismissed plaintiffs' complaint for failure to state a claim upon which relief could be granted.

On December 30, 2002, the same plaintiffs, including Peace and Walker, filed an unfair labor practice charge against the FOP with the Ohio State Employment Relation Board (OSERB), alleging that the FOP violated Ohio Revised Code § 4117.11(B)(6) by failing to

3

represent their interests during negotiations and failing to process their grievance.[1] Following an investigation, on April 9, 2003, the OSERB dismissed the charge with prejudice for lack of probable cause to believe that an unfair labor practice had been committed by the FOP and as untimely filed.

On May 16, 2003, Wellington posted a letter titled "Demotion of Corporals" that provided notice that the four corporals who failed the examination, including Peace and Walker, would be demoted to the rank of deputy, effective May 18, 2003, with pay in accordance with the CBA agreement. On September 17, 2003 seven of the deputies who passed the promotion examination were promoted to the rank of sergeant pursuant to Article 36 of the CBA, effective September 21, 2003.

On February 26, 2004, both Peace and Walker filed charges of discrimination against the MCSD with the Ohio Civil Rights Commission (OCRC). On July 22, 2004, the OCRC determined that no evidence had been discovered during the course of its investigation that would substantiate either that Peace and Walker were demoted or denied promotion to sergeant on the basis of race. The OCRC concluded that there was no probable cause to believe that the MCSD engaged in any unlawful discriminatory practice under Ohio Revised Code § 4112.02.[2]

---

[1]Section 4117.11(B)(6) of the Ohio Revised Code provides that it is an "unfair labor practice for an employee organization, its agents, or representatives, or public employees to, . . . [f]ail to fairly represent all public employees in a bargaining unit."

[2]Section 4112.02 of the Ohio Revised Code provides "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." OHIO

4

On January 19, 2005, Peace and Walker filed a complaint in the Northern District of Ohio against Wellington in his official capacity as sheriff. Peace and Walker brought three separate claims: (1) a disparate treatment claim, citing unlawful discrimination based on race in violation of Title VII; (2) a disparate impact claim, also based on Title VII; and (3) a § 1983 claim citing failure to promote and their demotion from the rank of corporal to the rank of deputy in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[3]

The district court held that Peace and Walker failed to establish a *prima facie* case of disparate impact under Title VII. The district court also found that Peace and Walker failed to set forth sufficient evidence to establish a genuine issue of material fact as to whether a constitutional violation actually occurred or whether Wellington was responsible for any such violation. Accordingly, the court granted Wellington summary judgment on both the Title VII and § 1983 claims. On October 5, 2005, the district court dismissed with prejudice plaintiffs' complaint in its entirety.

Peace and Walker filed a timely notice of appeal to this court on October 24, 2005.

## II.

This court reviews the grant of summary judgment *de novo*. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Summary judgment is appropriate if "the pleadings, depositions,

---

REV. CODE ANN. § 4112.02(A).

[3]Peace and Walker limit their appeal to their Title VII disparate impact claim and § 1983 claim. Issues raised in the district court, yet not raised on appeal, are considered abandoned and not reviewable on appeal. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If, on the other hand, "a reasonable jury could return a verdict for the nonmoving party," summary judgment for the moving party is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision, this court draws all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). There are two principal means of proving employer discrimination under Title VII: disparate treatment and disparate impact. *Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995). As previously noted, we deal only with a disparate impact claim in this appeal.

Disparate impact causes of action penalize employment practices that are "fair in form but discriminatory in operation." *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005) (internal quotation marks and citation omitted). Accordingly, the disparate impact analysis is intended to ensure that employers do not use seemingly neutral decision-making mechanisms that in actuality tend to eliminate a greater portion of otherwise qualified members of a protected group than they do members of other groups. *Id.* Unlike disparate treatment, disparate impact does not require a showing of discriminatory motive, as the claim "is based on statistical evidence of systematic

6

discrimination (i.e., a pattern or practice which results in discrimination)." *Huguley*, 52 F.3d at 1370.

The Supreme Court has established a three-part burden-shifting test to determine whether an unlawful disparate impact exists. *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975); *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir. 2000). First, the plaintiff must establish a *prima facie* case of discrimination, i.e., "that an adverse impact has actually occurred." *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005). If the plaintiff establishes a *prima facie* case, the employer must then show that the protocol in question has a "manifest relationship to the employment," referred to as the "business justification." *Id.*; *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). If the employer demonstrates such a business justification, the plaintiff must then show that other potential tests or selection protocols would serve the employer's interest without creating the undesirable discriminatory effect. *Albermarle*, 422 U.S. at 425; *Isabel*, 404 F.3d at 411.

Accordingly, Peace and Walker must first establish a *prima facie* case of discriminatory impact. To do so, Peace and Walker must: (1) identify a specific employment practice to be challenged; and (2) demonstrate an "adverse effect" by offering statistical evidence "of a kind or degree sufficient to show that the practice in question has caused the adverse effect in question." *Kovacevich*, 224 F.3d at 830 (quoting *Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 908 (6th Cir. 1991)); *see also Johnson v. U.S. Dept. of Health and Human Servs.*, 30 F.3d 45, 48 (6th Cir. 1994).

The Supreme Court has not specified the type or types of statistical evidence upon which

7

courts should rely. *Isabel*, 404 F.3d at 412. A plaintiff who presents a statistical analysis of a challenged practice under Title VII need not rule out all other potential variables nor prove discrimination with scientific certainty, *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 406 (6th Cir. 1999), but a plaintiff must prove discrimination by a preponderance of the evidence. *Bazemore v. Friday*, 478 U.S. 385, 400-01 (1986) (finding that the persuasive force of a plaintiffs' statistical regression analysis "will depend in a given case on the factual context of each case in light of all the evidence presented by both the plaintiff and the defendant.").

Peace and Walker offer virtually no statistical substantiation for their disparate impact claim. Plaintiffs' brief includes only two substantive sentences regarding disparate impact, and both are conclusory. Brief of Plaintiff-Appellants at 10. Peace and Walker emphasize that "75% of those demoted to deputy were African-American." *Id.* Without more, however, it is impossible to determine whether the promotion examination in fact resulted in a disparate impact. Peace and Walker offer no evidence regarding the other corporals who took the promotion examination; we can only speculate that one of the two other corporals who failed the examination was African-American, based on the statement in the brief. Further, Peace and Walker put forth no data regarding the deputies who took the promotion examination or of the total pool of test-takers, so as to permit assessment of the overall impact of the examination. Because the mere assertion that 75 percent of corporals who failed the examination were African-American does not meet plaintiffs' burden, we affirm the district court's holding that Peace and

Walker failed to establish a *prima facie* case of disparate impact.[4]

### III.

In Count III of their complaint, Peace and Walker allege a § 1983 equal protection claim and cite violation of their rights under the Fourteenth Amendment of the United States Constitution. To state a viable § 1983 claim, a plaintiff must allege that: (1) he or she was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under the color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).

A successful equal protection claim against a public employer for employment discrimination requires that the plaintiff show that the employer made an adverse employment decision "with a discriminatory intent or purpose." *Charles v. Baesler*, 910 F.2d 1349, 1356-57 (6th Cir. 1990). Peace and Walker rely solely on their assertion that 75 percent of those demoted were African-American and have not produced any evidence of discriminatory intent or purpose. Thus, their § 1983 claim fails.

### IV.

_____

[4]Under the Supreme Court's three-part burden-shifting test discussed above, if Peace and Walker had established a *prima facie* case of disparate impact, Wellington would then be required to show that the protocol in question has a "manifest relationship to the employment," referred to as the "business justification." *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971); *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005). Because we find that Peace and Walker have not established a *prima facie* case, we do not address the possible business justification.

9

For the foregoing reasons, we affirm the district court's grant of summary judgment for defendant Wellington.