**Sam GEORGE, Plaintiff,**

v.

**AVENTIS PHARMACEUTICAL, INC., Defendant.**

No. 01–2904.

United States District Court,
W.D. Tennessee,
Western Division.

March 18, 2003.

J. Daniel Breen, U.S. Magistrate Judge, Memphis, TN, pro se.

Joseph Kellam Warren, James R. Mulroy, II, Lewis, Fisher, Henderson, Claxton and Mulroy, Memphis, TN, for defendant.

Henry C. Shelton, III, Armstrong Allen, PLLC, Parke S. Morris, Cochran, Cherry, Givens, Smith & Bolton, Memphis, TN, for plaintiff.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DONALD, District Judge.

This matter is before the Court on Defendant Aventis Pharmaceutical, Inc.'s motion for summary judgment on Plaintiff Sam George's claims that Defendant violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et*

*seq,* and the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. § 4–21–101 *et seq,* and committed the common law torts of outrageous conduct and negligent supervision. Plaintiff avers that 1) he was discriminated against on the basis of age when he was denied promotions to four different positions; and 2) he was subjected to a hostile work environment due to allegedly ageist remarks made by his supervisor. Defendant argues that no genuine issue exists as to any material fact. Specifically, Defendant contends that 1) Plaintiff's hostile work environment age harassment claim is time-barred, and lacking in legally actionable severity or pervasiveness; 2) three of Plaintiff's failure to promote claims are time-barred, and the remaining failure to promote claim is defeated because legitimate, nondiscriminatory reasons exist for not promoting Plaintiff which Plaintiff cannot rebut; and 3) Plaintiff's common law tort claims are barred by the applicable statute of limitations and the exclusive remedy provision of the Tennessee Workers' Compensation Law.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Court Grants in Part and Denies in Part Defendant's motion for summary judgment.

## I.  Factual Background and Procedural History[1]

In February 1996, Rhone–Poulenc Rorer ("RPR") acquired Fisons Pharmaceutical Company. Aventis is the corporate biproduct of the January 2000 merger between RPR and Hoechst AG. Plaintiff, a sixty-four year old male, worked for Fisons prior to its acquisition by RPR, and for Aventis after RPR merged with Hoechst AG. While at Fisons, Plaintiff worked as a district manager for one and a half years. Subsequently, Fisons promoted Plaintiff to a national trainer position in Fisons' home office. As a national training manager, Plaintiff conducted training classes for new hires and advanced training courses for line managers to assist those managers in the evaluation of sales representatives. Next, Plaintiff assumed another district manager position for Fisons, this time over the Southeast District. Immediately prior to the RPR/Fisons acquisition, Plaintiff was the acting regional manager for the Fisons region that included Memphis. At the time of the RPR/Fisons acquisition, Plaintiff applied for an Area Manager's position in Jacksonville, Florida, which opened as a result of the acquisition. Plaintiff and Don Shearer were considered for the position. Defendant alleges that it has a hiring practice which gives job placement priority to individuals who already have experience in the geographic area for which a position will be responsible. Defendant further alleges that Shearer was placed in the position because Shearer already knew the Jacksonville market because it was within Shearer's region while he still worked at

---

1.  The following is a statement of facts taken from Defendant's Memorandum in Support of Its Motion for Summary Judgment, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, and Plaintiff's Response to Defendant's "Statement of Undisputed Facts." The Court notes that Plaintiff's responsive memoranda grossly exceed the page limits prescribed by Local Rule 7.2(e), providing that summary judgment memoranda shall not exceed twenty pages unless a party has leave of court to file a longer brief. Plaintiff's memoranda total fifty-four pages. Plaintiff's backdoor attempt to get around Local Rule 7.2(e) by filing a statement of undisputed facts separate from its responsive memorandum without seeking leave of this Court to exceed the Rule's page limitations is dishonest and reprehensible. Although the Court is permitted to disregard Plaintiff's statement of undisputed facts *en toto,* the interest of justice prevents the Court from doing so. However, Plaintiff's conduct will not be tolerated by the Court in the future.

Fisons. Plaintiff alleges that he was unaware of Defendant's geographically-based placement priority, and that he was not told why he did not get the Area Manager position. Plaintiff further alleges that Jacksonville, Florida was a part of his territory when he worked at Fisons. At the time the promotion decisions were being made, Plaintiff and Shearer were fifty-eight and fifty-three years old, respectively.

Plaintiff alleges that shortly after Shearer received the Area Manager position, Jim Mitchell, Plaintiff's sixty-two year old direct supervisor, told Plaintiff that no one over the age of forty gets promoted, regardless of how qualified they are. Plaintiff alleges that Mitchell repeated this comment several times. Mitchell denies that he ever made such comments, and stated that on numerous occasions he declined promotions he was offered after he turned forty because they often required moving to a place he did not want to live. Plaintiff alleges that Mitchell once stated that one member of their sales team was so old that he could not stay awake at a sales meeting. Mitchell also allegedly stated that RPR needed younger people to work for it because the job was too hard. Mitchell admits that he once stated that members of his team could be poster children for assisted living. Plaintiff alleges Mitchell's allegedly ageist comments increased in frequency around the time Plaintiff applied for promotions.

In February 1996, Plaintiff applied for a regional trainer position based in Nashville. Plaintiff interviewed with Jon Adams for this position. Plaintiff did not get the position because it was given to Greg Yanndell. Yandell was thirty-one years old at the time. Adams testified that Plaintiff was not given the job because Adams wanted the regional trainer to stay in Nashville for only one year and then move to the company's headquarters in New Jersey. Plaintiff alleges that he was never asked whether he was willing to move to New Jersey during his interview. Plaintiff further alleges that he was never told why he did not receive the regional trainer position.

In December 1997, Plaintiff became aware of and interested in an Area Manager position in Jacksonville in the Advanced Therapeutics Division ("ATD"). The ATD called on hospitals and sold a product named Lovenox. Plaintiff notified Mitchell of his interest in the position and Mitchell arranged for Plaintiff to submit his resume to Laura Murak. Murak conducted an initial screening interview with Plaintiff which Plaintiff alleges did not go very well. Plaintiff alleges that Murak took no notes during the interview, that Murak was not prepared for the interview and that Plaintiff did not believe that he was being seriously considered for the position. When Plaintiff expressed his dissatisfaction with the interview to Adams and asked Adams why Plaintiff was not being seriously considered for the position, Adams allegedly told Plaintiff that Fisons' people did not have the management style, qualifications or training that RPR people had. Defendant alleges that after the interview, Murak determined that Plaintiff did not possess the skill sets to become an Area Manager in the ATD. According to Adams, no one was promoted within the ATD unless they had previously sold Lovenox within the ATD. Plaintiff alleges that he was not told that this was a requirement for promotion. Plaintiff further alleges that Adams had been the Business Unit Director over the Southeast prior to becoming the Regional Director over the ATD. The Area Manager position was offered to Tom Tisdale who was thirty-four years old at the time. Tisdale was already a successful Lovenox representative who previously worked in advanced therapeutics in hospitals.

In May 2000, Defendant posted an internal announcement that there was an opening for a PCP2 Area Manager position in the Memphis, TN/Little Rock, AR area which reported to Jim Tully. Mitchell encouraged Plaintiff to apply for the position. Plaintiff and five other employees of various ages applied for the position. Prior to interviewing Plaintiff, Tully spoke to Mitchell who recommended Plaintiff for the position. After Tully interviewed Plaintiff, Tully recommended Plaintiff to Frank Clyburn for the PCP2 Area Manager position. Plaintiff alleges that Tully also told him that the Area Manager position was his.

Clyburn interviewed Plaintiff on July 11, 2000. However, before Clyburn interviewed Plaintiff, Finley Vaughn, Plaintiff's Regional Manager, spoke with Tully and told Tully that neither he nor Richard Halstead, Plaintiff's former second level manager, supported Plaintiff's promotion. Tully then spoke to Halstead who told Tully that three concerns prevented him from supporting Plaintiff's promotion: 1) Plaintiff was consistently negative in his remarks and comments about the new Aventis organization as compared with Fisons'; 2) Plaintiff displayed a lack of judgment in communicating up the chain of command; and 3) Plaintiff was overly emotional. Halstead testified that he knew about Plaintiff's alleged over-emotionalism from communications with Mitchell. Halstead further testified that Plaintiff allegedly demonstrated lack of judgment in communicating up the chain of command after Plaintiff pursued a grievance up the chain of command from Mitchell to Halstead, and threatened to continue to go higher if he was not satisfied with Halstead's supervisor's response to his grievance. Finally, Halstead stated that he learned about negative comments Plaintiff made about Aventis' organization from Mitchell, direct communication with Plaintiff, and weekly reports Plaintiff filed.

Halstead also testified that while Plaintiff's sales performance was not critical, he told Vaughn that he was concerned about it. Based on his conversations with Vaughn and Halstead, Tully called Clyburn and told him that Plaintiff did not enjoy the support of his upper level management.

Plaintiff alleges that during his interview with Clyburn, it became clear from Clyburn's body language that Clyburn had already made the decision not to hire Plaintiff for the position. Clyburn alleges that during the interview, Plaintiff ranted for approximately ten to fifteen minutes about his issues with the legacy RPR associates and made derogatory remarks about current management and statements that would indicate a divisive management style. Clyburn further testified that the interview left him questioning Plaintiff's ability to work effectively in the marketplace and demonstrate the leadership and teamwork that Aventis needed. Plaintiff denies that he ever expressed any negative feelings towards the Aventis management team or toward RPR personnel. Plaintiff further alleges that at no time during the interview did he get emotional, upset or angry.

Several days after the interview, Tully and Clyburn conferred. Clyburn allegedly told Tully that he had questions about Plaintiff's leadership abilities. Clyburn allegedly stated that he found Plaintiff to be divisive and wanted someone who would work in a consensus building fashion. Tully then called Plaintiff and withdrew the offer Tully allegedly extended after Plaintiff interviewed with him. When Plaintiff asked Tully why he did not get the promotion, Tully allegedly told him that Halstead had "poisoned" Plaintiff's candidacy. Plaintiff asked Halstead directly if he had done so, and Halstead allegedly admitted that he "poisoned" Plaintiff's candidacy. Halstead allegedly refused to give Plaintiff

an explanation for why he interfered with Plaintiff's promotion. At the time Halstead interfered, Halstead was outside of Plaintiff's chain of command. The Area Manager position was ultimately offered to Maurice Oswalt who was in his mid-thirties at the time.

Plaintiff received a President's Club Award two times, once in 1996. To receive the President's Club Award Plaintiff had to be in the top two percent in sales on a national level. Plaintiff also was nominated for the RPR Way Award for his high business ethics, team spirit and leadership. Mitchell described Plaintiff as an overall good sales manager and district trainer for RPR/Aventis, and good team worker.

Plaintiff filed an EEOC Charge of Discrimination on July 28, 2000, and on August 10, 2001 the EEOC issued a notice of suit rights. Plaintiff timely filed a complaint in the Western District of Tennessee on November 5, 2001. Defendant filed the instant motion for summary judgment on December 16, 2002.

## II. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. In-*

*dus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588 (6th Cir.1998). However, the nonmovant "may not rest upon the mere allegations or denials of [the] pleading[s], but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## III. Analysis

### A. Age Discrimination

#### 1. Hostile Work Environment Age Harassment

■ Defendant asserts that Plaintiff's age harassment claim must be dismissed because it exceeds the scope of Plaintiff's charge of discrimination. The Court agrees. In *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546 (6th Cir.1991), the Court held that where a plaintiff fails to indicate on the charge of discrimination the nature of discrimination experienced before the charge was filed, a court may dismiss that cause of action from the suit. On his charge of discrimination, Plaintiff makes no reference to the allegedly ageist comments made by Mitchell, nor to his alleged feelings of being harassed. Plaintiff states solely that he had been "continuously denied managerial positions within the last four years." EEOC Charge of Discrimination No. 250A01019, filed by Sam K. George, July 28, 2000. Thus, Plaintiff's age harassment claim exceeds the scope of the EEOC charge. Accordingly, Defendant's motion as to Plaintiff's hostile work environment age harassment claim is GRANTED.

#### 2. Disparate Treatment Discrimination

■ Defendant argues that it is also entitled to summary judgment on Plaintiff's disparate treatment age discrimina-

tion claim. The Court disagrees. To prevail on a claim of disparate treatment, a plaintiff must show discriminatory motive. *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir.1995). Such motive can be established by direct evidence or may be inferred from a prima facie showing of discrimination.[2] *Id.* To establish a prima facie case of discrimination, a plaintiff must prove that the 1) plaintiff is a member of a protected group; 2) plaintiff was subject to an adverse employment action; 3) plaintiff was qualified for the position sought; and 4) position was filled by a person outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir.1994). These four elements must be proven by a preponderance of the evidence. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Wilson v. Stroh Companies, Inc.*, 952 F.2d 942, 945 (6th Cir.1992).

■ If a plaintiff succeeds in establishing a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for taking the adverse employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. Once the employer provides a legitimate, non-discriminatory reason for taking the adverse employment action, the plaintiff may still prevail if evidence has been proffered that tends to disprove the reasons offered by the defendant. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 347 (6th Cir.1997). Even if the plaintiff proves that the employer's proffered reason is pretext, he still bears the ultimate burden of proving that discriminatory intent motivated the defendant's actions. *St. Mary's Honor Ctr. v.*

*Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### a. Plaintiff's Prima Facie Case of Discrimination

■ Defendant argues that three of Plaintiff's failure to promote claims are time-barred, and that they cannot be preserved under the continuing violations theory. The Court agrees. An age discrimination plaintiff must file a charge of discrimination with the EEOC or appropriate state agency within 300 days after the discriminatory practice occurred. 29 U.S.C. § 626(d). The continuing violations theory provides an exception to this rule, permitting a plaintiff to recover for discriminatory acts which occurred outside the limitations period where the acts were a part of a continuous pattern of discrimination. *Held v. Gulf Oil Co.*, 684 F.2d 427, 430 (6th Cir.1982). However, the Supreme Court recently held that "discrete discriminatory acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges.*" *Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106(2002) (emphasis added). The Court specifically found that an employer's failure to promote is "easy to identify" as a discrete act which must occur within the statutory time period preceding the filing of an EEOC Charge of Discrimination. *Id.* Therefore, only promotion denials which occurred within the timely filing period preceding Plaintiff's EEOC Charge of Discrimination are legally cognizable. *Id.* at 2073.

Plaintiff filed his EEOC Charge of Discrimination on July 28, 2000. The only promotion denial which occurred within the 300 days preceding this date was the grant of the PCP2 Area Manager position to Oswalt. Accordingly, the other three

---

**2.** Plaintiff does not assert that there is direct evidence of age discrimination. Accordingly,

the Court moves directly to an analysis of Plaintiff's prima facie case of discrimination.

promotion denials are time-barred, and the Court will consider only whether Defendant's failure to promote Plaintiff to the PCP2 Area Manager position was unlawful. The other promotion denials may be used only as "background evidence in support of [Plaintiff's one] timely claim." *Id.* at 2072.

■ There is no dispute that Plaintiff was at least forty at the time that he was denied the PCP2 Area Manager position. Thus, Plaintiff is a member of a protected group, and the first prong of the *McDonnell Douglas* test is satisfied. 29 U.S.C. ¶ 631(a). Defendant does not dispute that failure to promote constitutes an adverse employment action. *See Jeffries v. Wal-Mart Stores, Inc.,* 15 Fed.Appx. 252, 263 (6th Cir.2001) (fail[ure to] promote [is a] classic example[ ] of [an] adverse employment action[ ] ) (emphasis added) (unpublished). Furthermore, the parties do not dispute that Oswalt was in his thirties when he was granted the PCP2 Area Manager position. Thus, the only remaining issue is whether Plaintiff was qualified for the position he sought.

Plaintiff succeeds in raising a genuine issue as to whether he was qualified for promotion to the PCP2 Area Manager position. Defendant alleges that Plaintiff was not selected for the PCP2 Area Manager position because Clyburn determined that Plaintiff lacked the judgment and maturity necessary to become an area manager with Aventis after interviewing him. Plaintiff alleges, however, that his qualification for the PCP2 Area Manager position is evidenced in numerous ways. First, Plaintiff points out that both his first and second level managers unequivocally supported his candidacy for the position before Halstead and Vaughn got involved. Second, Plaintiff asserts that before the mergers, he held a district manager position with Fisons, which is the functional equivalent of an Area Manager position

with Aventis. Plaintiff also served as a regional and national trainer for Fisons. In addition, Plaintiff received a national award for superior sales performance and recognition from Mitchell for his team building and team spirit. The Court finds these allegations sufficient to raise a genuine issue as to whether Plaintiff was qualified for the PCP2 Area Manager position. Accordingly, Plaintiff has alleged sufficient facts to establish a prima facie case of age discrimination. The burden now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for not promoting Plaintiff to the PCP2 Area Manager position.

### b. Defendant's Legitimate, Nondiscriminatory Reasons For Its Conduct

■ Defendant asserts that Plaintiff was not selected for the PCP2 Area Manager position because, based on comments Plaintiff made during his interview with Clyburn, Clyburn found Plaintiff to be lacking in the judgment and maturity required for the position. The Court finds that this constitutes a legitimate, nondiscriminatory reason for why Plaintiff was not selected for the PCP2 Area Manager position. Accordingly, the burden shifts back to Plaintiff to demonstrate that Defendant's asserted legitimate, nondiscriminatory reasons are a pretext for discrimination.

### c. Plaintiff's Assertion of Pretext

■ Plaintiff argues that Defendant's asserted justifications for why it did not promote him are pretextual. A Plaintiff may prove pretext by showing that the proffered reason for the employer's action is not based in fact. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). Plaintiff specifically denies that he ever made any of the negative comments which allegedly lead Clyburn to decide that he lacked judgment and matu-

rity. Thus, there is a direct, factual conflict between Defendant's and Plaintiff's testimony as to what transpired during Plaintiff's PCP2 Area Manager position interview with Clyburn. The Court is prohibited from making credibility determinations when deciding motions for summary judgment, and may not attempt to determine whose testimony is accurate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (holding that "at the summary judgment stage the judge's function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Thus, the Court finds that Plaintiff has demonstrated the existence of a material fact as to whether Defendant's proffered reasons for not promoting Plaintiff were pretextual. Accordingly, the Court DENIES Defendant's motion as to Plaintiff's disparate treatment discrimination claim.

### B. Tennessee Human Rights Act Claims

 Defendant contends that to the extent Plaintiff's claims are based on the THRA they are time-barred. The Court agrees. An action brought pursuant to the THRA must be filed "within one year after the discriminatory practice ceases." Tenn. Code Ann. § 4–21–311(d). Plaintiff was denied the PCP2 Area Manager position in July 2000. Plaintiff did not file his complaint until November 5, 2001, well after the period of limitation closed. For the reasons stated *supra* at III.A.1., Plaintiff's THRA claims cannot be preserved pursuant to the continuing violations theory. Accordingly, the Court GRANTS Defendant's motion as to Plaintiff's THRA claims.

### C. Common Law Claims

Defendant contends that Plaintiff's common law claims are also time-barred. The Court agrees. In Tennessee, personal tort actions must be brought "within one year after the cause of action accrued." Tenn.Code Ann. § 28–3–104. This includes causes of action for outrageous conduct, *Farris v. Todd,* 2000 WL 528408 at *2 (Tenn.Ct.App.2000), and negligent supervision. *Hays v. Patton–Tully Transp., Co.,* 844 F.Supp. 1221, 1224 (W.D.Tenn.1993). Plaintiff was denied the PCP2 Area Manager position in July 2000. Plaintiff did not file his complaint until November 5, 2001, well after the period of limitation closed. For the reasons stated *supra* at III.A.1., Plaintiff's common law claims cannot be preserved pursuant to the continuing violations theory. Accordingly, the Court GRANTS Defendant's motion as to Plaintiff's common law claims.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendant's motion as to Plaintiff's age harassment, THRA and common law claims, and DENIES Defendant's motion as to Plaintiff's age discrimination claim based on denial of promotion to the PCP2 Area Manager Position.