Hosea STEWART, Plaintiff,

v.

MEMPHIS HOUSING AUTHORITY,
Defendant.

No. 02–2938.

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 17, 2003.

Kathleen L. Caldwell, Law Office of Kathleen L. Caldwell, Glenwood Paris Roane, Law Office of Glenwood P. Roane, Memphis, TN, for plaintiff.

Gregory L. Perry, Memphis Housing Authority, Paul E. Prather, Phillis R. Morgan, Robert D. Meyers, Kiesewetter Wise Kaplan Schwimmer & Prather, PLC, Memphis, TN, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND STRIKING THE ALTERNATIVE MOTION FOR DISMISSAL

DONALD, District Judge.

Before the Court is the motion of Defendant Memphis Housing Authority ("Defendant" or "MHA") to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56. Plaintiff Hosea Stewart ("Plaintiff") asserts violations of (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e et seq. ("Title VII"); (2) 42 U.S.C. § 1983, for deprivation of property without due process of law under the Fourteenth Amendment to the United States Constitution; (3) the Tennessee Human Rights Act, Tenn.Code Ann. § 4–21–401 (2003); (4) the Tennessee Public Protection Act, Tenn.Code Ann. § 50–1–304 (2003); and (5) the state common law torts of invasion of privacy, intentional and negligent infliction of emotional distress, outrageous conduct, and wrongful termination. Defendant argues that (1) Plaintiff's Title VII claim is time-barred because he did not file the Complaint within ninety days of receiving a Right to Sue Notice from the Equal Employment Opportunity Commission ("EEOC"); (2) Plaintiff's remaining claims are time-barred because he filed the Complaint after the one year statute of limitations had run; and (3) Plaintiff has no excuse for his delay that would justify equitable tolling of either time limit. For the following reasons, the Court grants Defendant's motion.[1]

## I. Factual Background[2]

Defendant is a governmental entity in the State of Tennessee. Plaintiff is an African–American male who began employment with the MHA on June 15, 1994. Plaintiff's initial job title was "manager one" or "assistant manager." In 1995, Plaintiff was promoted to "manager two" or "manager." He remained in that job category through the rest of his employment.

In June 1999, Plaintiff was scheduled for hernia surgery repair. He alleges that, at that time, he began to be "treated differ-ently" at work. For example, his supervisor became hostile to him, and his job performance was criticized, allegedly without merit.

On June 15, 1999, a deputy at MHA summoned Plaintiff to answer questions regarding complaints about maintenance in an MHA apartment. Plaintiff had surgery one week later. While he was recovering, the Sheriff's Department investigated the complaints and discovered that the tenant was paying an MHA employee to get a new MHA apartment. Plaintiff claims that he was not involved in that illegal activity.

Also while Plaintiff was recovering, Ms. Bennett of the MHA stated to Derwin Jackson, Plaintiff's supervisor at that time, that Plaintiff was not supervising his staff properly. Plaintiff alleges that an assistant manager was supposed to take over his responsibilities while he was out of the office, but that MHA refused to allow the assistant manager to do so.

On or about September 12, 1999, Plaintiff returned to work and was informed that a murder had occurred on MHA property. Plaintiff was instructed to relocate the victim's family. Plaintiff found a new apartment for the family and began to process their transfer, but he was then notified that another occupant would be transferred into the identified apartment. Plaintiff began to search for a different apartment. The victim's family was later transferred into the apartment that Plaintiff initially identified.

On September 17, 1999, Plaintiff was suspended for three days for "unsatisfactory job performance." On October 21,

---

**1.** The parties have presented, and the Court has considered, matters outside the pleadings in disposing of this motion. Therefore, pursuant to Rule 12(b), the Court will treat this as a motion for summary judgment. Fed.R.Civ.P. 12(b).

**2.** Facts are taken from the Complaint, Plaintiff's Deposition on May 7, 2003 and its attached Exhibits, and Defendant's Memorandum in Support of Motion to Dismiss, or, in the Alternative, Summary Judgment.

1999, Plaintiff was terminated. The termination notice included the same language as did the suspension, as well as allegations of late reports and a complaint regarding unsatisfactory housekeeping by an MHA tenant with whom Plaintiff had been working to improve her housekeeping skills. Plaintiff discussed the termination with Mr. Jackson and informed Mr. Jackson that he believed the termination was wrongful, and that it was in retaliation either for the fact that he had not been "written up" since 1996 or for difficulties in having the murder victim's family transferred. At the time of his termination, Plaintiff requested a copy of the MHA Manual of Operations, which contained the MHA Personnel Grievance Procedure.

On October 26, 1999, Plaintiff requested a grievance hearing with his supervisor. Plaintiff again stated his belief that the termination was retaliatory and undeserved. His termination was upheld. Plaintiff filed a second appeal, and a second hearing took place, at which his termination was again upheld. Plaintiff filed a third appeal. On January 4, 2000, Frank Pope, the Manager of Personnel at MHA, informed Plaintiff by letter that the next step in the grievance procedure was arbitration. Although Plaintiff initially alleged that Defendant told him that his exclusive remedy was through arbitration, he later admitted that he was not so told.

On March 6, 2000, Plaintiff requested immediate arbitration of his termination or a return to employment. An arbitration hearing was set for April 20, 2000, but the parties left that hearing without arbitrating because Plaintiff was then represented by a paralegal firm, rather than by counsel. From that time through the fall of 2001, Plaintiff contacted Defendant several times to request a date for arbitration, to provide and request names of potential arbitrators, and to discuss who would bear the costs of arbitration. At some point,

MHA suggested mediation as an alternative to arbitration, and Plaintiff again contacted Defendant to request the names of mediators and to discuss payment for mediation. On January 9, 2002, MHA informed Plaintiff that it no longer wished to pursue mediation of his claims. In a letter on January 18, 2002, MHA stated that Plaintiff had "exhausted" its "desire to resolve this matter." Defendant asserted that the statute of limitations had run on any claims Plaintiff may have had, and that Plaintiff had substantially prejudiced Defendant with his delay. Plaintiff never received either arbitration or mediation of his claims.

Throughout this time, Plaintiff was represented by or affiliated with several lawyers. First, as of March 6, 2000, Plaintiff had conferenced with attorney Ronald Wilson, who agreed to represent him upon being properly retained. Plaintiff never formally hired Mr. Wilson to represent him. Second, from some point prior to and including April 20, 2000, Plaintiff was represented by a firm of paralegals, who were affiliated with attorneys who may have been interested in representing Plaintiff. Third, from some point prior to and including July 24, 2000, Plaintiff retained Ian Taylor, an attorney who was not licensed to practice in Tennessee. Finally, in July of 2001, Plaintiff retained Kathleen Caldwell, the attorney who continues to represent him in this matter. Plaintiff had no gaps in representation between Mr. Taylor and Ms. Caldwell.

On March 20, 2000, Plaintiff filed a charge with the EEOC, alleging race discrimination and unlawful retaliation. The EEOC issued a Right to Sue Notice on March 21, 2000, which Plaintiff admits receiving several days later.

Plaintiff filed his Complaint in the Chancery Court of Tennessee on November 12, 2002. Defendant removed to this Court on

December 9, 2002. On May 21, 2003, Defendant filed the instant motion to dismiss, arguing that all of Plaintiff's claims are time-barred and that no excuse provides a reason for equitable tolling.

## II. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This in turn may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2727, at 35 (2d ed. Supp.1996).

Facts must be presented to the court for evaluation. *Kalamazoo River Study Group v. Rockwell Int'l,* 171 F.3d 1065, 1068 (6th Cir.1999). The court may consider any material that would be admissible at trial. 10a Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2721, at 40 (2d ed.1983). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Thaddeus–X v. Blatter,* 175 F.3d 378, 400 (6th Cir.1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Walborn v. Erie County Care Facility,* 150 F.3d 584, 588 (6th Cir.1998). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. *Kalamazoo River,* 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

## III. Analysis

### A. Time Limits

Under Title VII, when the EEOC issues a Right to Sue Notice to a complainant, "within ninety days after the giving of such notice a *civil action* may be brought

against the respondent named in the charge ... by the person claiming to be aggrieved." 42 U.S.C. § 2000e–5 (2003) (emphasis added). The EEOC issued Plaintiff a Right to Sue Notice on March 21, 2000. It is undisputed that Plaintiff did not file his Complaint until November 12, 2002, significantly longer than ninety days after receiving the Right to Sue Notice.

■ The rest of Plaintiff's claims are subject to one year statutes of limitations. *See* Tenn.Code Ann. § 4–21–311(d) (2003) (Tennessee Human Rights Act claims must be filed within one year after discriminatory practice ceases); Tenn.Code Ann. § 28–3–104(a) (2003) (under Tennessee law, § 1983 claims and personal tort actions subject to one year statute of limitations); *George v. Aventis Pharm., Inc.,* 252 F.Supp.2d 599, 607 (W.D.Tenn.2003) (same). Plaintiff's cause of action arose on the date of his termination, October 21, 1999. The termination is the discrete discriminatory act at issue here, and Defendant's delays in reaching arbitration do not convert it into a continuing violation that would fall within the statutory time periods. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("A discrete ... discriminatory act 'occurred' on the day that it 'happened.' "). Once again, it is undisputed that Plaintiff filed his Complaint more than one year after October 21, 1999.

■ Plaintiff argues that his requests for arbitration satisfy the time limits. "An individual commences a civil action by filing a complaint with the clerk of court." *Truitt v. County of Wayne,* 148 F.3d 644, 647 (6th Cir.1998); *see also* Fed.R.Civ.P. 3. Arbitration requests are not complaints and do not satisfy either Title VII's time limit or the one year statute of limitations.

Plaintiff's claims are therefore time-barred unless the Court determines that equitable tolling is appropriate.

**B. Equitable Tolling**

■ Statutes of limitations are subject to equitable tolling in appropriate situations. Similarly, Title VII's ninety-day filing requirement is not a "jurisdictional requirement, but, instead, is a timing requirement similar to a statute of limitations, subject to waiver, estoppel, and equitable tolling." *Truitt,* 148 F.3d at 646–47. "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 562 (6th Cir. 2000). The Sixth Circuit identified five factors to consider in determining the appropriateness of equitable tolling: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement." *Truitt,* 148 F.3d at 648 (refusing to toll filing period in Title VII case when plaintiff waited 120 days after denial of in forma pauperis petition to pay filing fee, thereby allowing 143 days to elapse after receiving right to sue letter). That list is not exhaustive, however, and each factor may not be material in every case. *See Graham–Humphreys,* 209 F.3d at 561. Equitable tolling is determined on a case-by-case basis. *Truitt,* 148 F.3d at 648.

■ The Court finds that the equities do not weigh in favor of tolling the time limits here. First, Plaintiff seems to have been under the impression that MHA required him to go through arbitration before he could file suit. If Defendant had affirmatively represented to Plaintiff that

arbitration was mandatory or misrepresented to Plaintiff that he was in compliance with any filing deadlines, this factor might favor tolling. *See Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) ("We have allowed equitable tolling in situations ... where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."). Plaintiff, however, admits that no one at MHA told him that arbitration was his exclusive remedy. (*See* Stewart Dep. 70–71.) Also, both the January 4, 2000 letter from Mr. Pope and the MHA's Manual of Operations indicate only that arbitration would have been the next step of internal review, not a required step or an alternative to litigation.

Second, Plaintiff was not hampered by a lack of notice or knowledge of the filing requirements. While Plaintiff might have received the benefit of the doubt if he were proceeding *pro se,* Plaintiff was represented by counsel for a significant portion of this case's progression. Admittedly, the documents submitted to the Court show only that Plaintiff had hired Mr. Taylor by July 24, 2000, and thus during the ninety day period following Plaintiff's receipt of the Right to Sue Notice, he was not officially represented by an attorney. (Taking the facts in the light most favorable to Plaintiff, the Court will consider Plaintiff's "representation" by the paralegal firm to be more akin to proceeding *pro se* than to representation by an attorney.) Had Plaintiff filed a civil action immediately upon retaining counsel, the equities might favor an extension of the time period. Plaintiff, however, waited more than two years after hiring Mr. Taylor to file this Complaint, during which time he was continuously represented by either Mr. Taylor or Ms. Caldwell. Such a long delay is unwarranted.

As to the statute of limitations on Plaintiff's other claims, there is no discernible evidence of lack of knowledge that the statute was running. In fact, the evidence is to the contrary. Specifically, while Plaintiff was represented by Mr. Taylor, Mr. Taylor sent a letter to Defendant indicating that he was aware that Plaintiff's claims would be time-barred in October 2000. (Letter from Taylor to Wharton of 9/15/00, at 1.) As Mr. Taylor was Plaintiff's agent, this knowledge is attributable to Plaintiff. Ms. Caldwell argues that the statute was not running throughout the parties' negotiations concerning arbitration (Letter from Caldwell to Reed of 2/18/02, at 1), however, case law supports the opposite conclusion, *see infra.* Negligence on the attorney's part is not a sufficient reason for tolling. *See Johnson v. U.S. Postal Serv.,* 64 F.3d 233, 238 (6th Cir.1995).

Third, this is not a case where Plaintiff was diligent in preserving his rights. *See Irwin,* 498 U.S. at 96, 111 S.Ct. 453 ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). Plaintiff attempted to engage Defendant in arbitration of his claims, but he did not approach the court system until both the ninety-day Title VII filing period and the statute of limitations on the remaining claims had run by over two years. Plaintiff did not file any sort of document, even a defective pleading, with the Court in that time. *See id.* ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period ...."). This extended delay represents a significant lack of diligence.

Finally, Plaintiff's insistence that his attempts to arbitrate his claims provide sufficient reason for tolling the statute of limitations is unavailing. *See Int'l Union*

860

*of Elec., Radio, and Mach. Workers, AFL–CIO, Local 790 v. Robbins & Myers Inc.,* 429 U.S. 229, 236, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (holding that the pendency of grievance or arbitration procedures does not toll the statutory period for filing a claim of discrimination with the EEOC). Defendant never stated to Plaintiff—either directly or in its Manual of Operations— that the pursuit of alternative dispute resolution, or even Defendant's own delays in scheduling arbitration or mediation, would not time bar Plaintiff's claims. *See Leake v. Univ. of Cincinnati,* 605 F.2d 255, 259 (6th Cir.1979) (allowing tolling during pendency of negotiations when defendant expressly agreed that it would not use the extended time granted to it for investigating plaintiff's complaint to prejudice plaintiff with respect to any statute of limitations). The text of Title VII provides no support for Plaintiff's argument, as it states only that a "civil action" may be filed within the ninety day period and does not refer to alternative dispute resolution by a complainant at all. 42 U.S.C. § 2000e–5.

On balance, there seems little prejudice to Defendant in tolling the time bar here. Defendant argues that it would be prejudiced because allowing employees to bring claims after such a long period of time assures Defendant of "timeless legal exposure." (Def. MHA's Reply to Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, or, in the Alternative, for Summ. J. at 7.) Statutes of limitation are designed to ensure potential defendants of legal repose after some period of time. MHA, however, was certainly on notice of Plaintiff's claims throughout the negotiations over alternative dispute resolution, given the extensive correspondence between the parties, thereby lessening any prejudice on these facts.

The Court finds, however, that the balance of the equities does not weigh in favor of tolling here, particularly given Plaintiff's extensive delay in filing suit with this Court.

## IV. Conclusion

The Court finds that Plaintiff's claims are time-barred under the applicable statutes. Further, the Court finds that this is not an appropriate case for equitable tolling. Therefore, Defendant's motion for summary judgment is granted. Accordingly, the Court **STRIKES** the alternative motion for dismissal as moot.